G. B. SCULL, Appellant,

v.

J. C. DAVIS and wife, Ruthie Mae Davis,
et al., Appellees.

No. 5952.

Court of Civil Appeals of Texas.

El Paso.

Oct. 30, 1968.

Rehearing Denied Nov. 27, 1968.

J. M. Preston, Pecos, for appellant.

E. Byron Singleton, Amarillo, McWhor-
ter, Cobb & Johnson, D. Thomas Johnson,
Lubbock, for appellees.

## OPINION

PRESLAR, Justice.

This suit arose out of a series of contracts for the exchange of various properties, which were followed by deeds, except one, which resulted in this contest involving breach of contract, trespass to try title, specific performance, and an intervenor seeking an equitable lien for the balance of the purchase price by his vendee under a deed. Trial was to a jury and resulted in a judgment upholding the breach of contract, denying specific performance establishing certain debts and allowances between various parties, and decreeing the existence of the lien sought. We reverse and render as to the lien, and affirm the remainder of the judgment.

In December of 1958 one J. C. Davis and wife entered into a contract to exchange property which included some 1200 acres of land in Reeves County for property of Texas Western Industries, Inc., situated in Gaines County; Texas Western Industries, Inc. then entered into a contract with Motel Magill and Week End Club (corporations owned or controlled by H. J. Bice), and Bice individually, to exchange the Reeves County land for a motel in San Angelo, Texas; Bice then entered into a contract to exchange this land to one Worsham for a motel in Van Horn, Texas; Worsham contracted to exchange the Reeves County land for a grocery store owned by one G. B. Scull. This last contract was dated January 16, 1959, and Scull immediately went into possession of the Reeves County land and remained in possession thereof until date of trial. Title of record was in Davis at the time Scull contracted with Worsham and took possession of the Reeves County land. On February 20, 1959 Davis executed a warranty deed to the Reeves County land to Texas Western Industries, Inc. (hereinafter referred to as TWI). TWI and Motel Magill, Week End Club, and Bice encountered disagreements in closing their transaction, and TWI filed this suit (April 15, 1959) against Motel Magill,

Week End and Bice, to rescind and cancel for breach of contract and to remove cloud on title to the Reeves County land. TWI conveyed the Reeves County land to Worsham on May 13, 1959, and the next day he conveyed it to Scull. These conveyances were by warranty deed, but contained a reservation that they were subject to the claims of Motel Magill, Week End Club and Bice in this suit. Magill, Week End Club and Bice filed a cross action seeking, among other things, specific performance of their contract with TWI, and impleaded Worsham and Scull as defendants. Some two years after the institution of the suit, Davis intervened, claiming a lien against the Reeves County land for failure of TWI to pay the balance of the consideration. The judgment was for Davis for the balance of his unpaid purchase price, in the amount of $41,903.51 against TWI, who was given judgment over for such sum against Motel Magill and Bice; Davis was also given a lien for such amount on the Reeves County land, with foreclosure ordered, and Scull was allowed certain credits for payments made to others, with such credits preferred over the Davis lien.

We are of the opinion that the judgment is incorrect in the particular that it established a lien in the amount of $41,903.53 in favor of appellee Davis against the 1200-acre Reeves County property of appellant Scull; this, for the reason that Davis did not meet his burden of proving that Scull was not a bona fide purchaser.

Though an intervenor, Davis was in the position of a plaintiff seeking to impose an equitable claim against the holder of the legal title. "One who claims an equitable interest or title as against a subsequent purchaser of the legal title assumes the burden of showing that the latter was not an innocent purchaser, that is, that he did not pay value or that he purchased with notice of the equity, or notice of such facts as would put a prudent man on inquiry." 59 Tex.Jur.2d 339, Vendor and Purchaser, § 813, and authorities there cited. Davis' case to impose the lien is based on failure

of consideration by his vendee, plaintiff Texas Western Industries, Inc., in that the vendee failed to reduce, to the extent of $41,903.53, an indebtedness against certain Gaines County land exchanged for the Reeves County land. Davis pleaded:

"That as a result of said failure of consideration flowing from Plaintiff to Intervenor, Intervenor here now alleges that they have an equitable, contract, vendor's and/or implied lien upon the Reeves County land to secure Intervenor in the payment of said sum of $41,903.53 plus accrued interest thereon at the rate of six per cent (6%) per annum from the 31st day of December, 1958. Pleading further, Intervenor would show that Defendants, Motel Magill, Inc., Week End Club, and H. J. Bice, individually, and Third Party Defendants, Fred R. Worsham and E. B. Scull, each had notice of Plaintiff's failure to comply with the terms of its contract (Exhibit 'A') and of Intervenor's claim of an equitable, contractual, vendor's and/or implied lien against the unencumbered 1200 acres of the Reeves County land involved in this suit, at the time that each of them entered into a contract or negotiation to contract for the purchase of said land with Plaintiff or each other."

Davis further alleged that he discovered on or about *December 24, 1959* this failure of consideration. All of the contracts for exchange of property were made prior to the series of deeds which followed and we are not concerned with them in discussing this point, for the court did not base its judgment of lien on contract, but found specifically that Davis was entitled to an "equitable and an implied lien". Davis executed a warranty deed to TWI on February 20, 1959 and it was recorded March 3, 1959. All contracts for exchange of the various properties by the various parties had been entered into prior to this time, the latest in time being between Worsham and Scull, dated January 16, 1959, at which time Scull gave up possession of his grocery store and home in exchange for the 1200-acre Reeves County farm. Following the Davis warranty deed to TWI, the 1200 acres, by mesne conveyances, came to Scull by warranty deed on May 14, 1959. Thus we have Davis, who conveyed by warranty deed with no reservation of his lien, establishing an equitable lien, for failure of consideration which occurred in December 1959, against Scull who acquired legal title by warranty deed in May 1959. He urges in support of such judgment that Scull had actual and/or constructive notice of his claim, or such notice as would bind him to make further inquiry, and therefore he is not a purchaser for value without notice—a bona fide purchaser. With that we are unable to agree. The cause of action of Davis is one by a vendor against a sub-vendee for a lien which is a creature of the courts, as distinguished from one created by any contract of the parties. His is a secret lien, as to which he urges that Scull had constructive notice, because he, Davis, had legal title of record at the time Scull paid the greater part of his consideration—gave up the grocery store. Davis cites the rule of law that a purchaser is properly chargeable with notice up to the time of payment of the purchase money. But that rule is not controlling here, for at the time Scull paid his consideration (January 16, 1959), Davis did not have a lien. The lien here imposed was created by the failure of consideration arising out of Davis' deed to Texas Western Industries, Inc., dated February 20, 1959. By this conveyance Davis retained no lien, contractual in nature; in fact covenanted by use of the words "grant" and "convey" that none existed. Art. 1297, Vernon's Ann.Civ.St. His prior contracts with TWI leading to the execution and delivery of the warranty deed are presumed to have been merged in the deed, and the deed expresses all the agreements between the parties, in the absence of pleading and proof that references thereto were omitted from the deed through mistake, accident, or fraud. Barker v. Coastal Builders, 153 Tex. 540, 271 S.W.2d 798; Stone v. Tigner, Tex.Civ.App., 165 S.W.2d 124 (err. ref.). The contracts for

exchange of property are not involved and are not the basis of contest between intervenor Davis and Scull; and, as noted above, Davis' suit is against Scull long after he acquired legal title, and is for failure of consideration by the vendee under his warranty deed. Davis' lien arose because of the failure of his vendee to pay the balance of the purchase price; it is a creature of equity based on the principle that it would be inequitable to allow one to retain the property of another without paying for it. "As an equitable interest, it is not recordable and protection to innocent purchasers rests on equitable principles, and not on the recordation statutes". United States v. Morrison, 5 Cir., 247 F.2d 285. In that case it was said:

"* * * the lien, equitable in nature, arises only because equity in good conscience requires it to accomplish right and justice. Whether it exists depends on the equities which, in turn, depend upon facts including the intention of the vendor either to, or not to, waive it. As a secret lien it is, or may be, outranked by many liens of innocent purchasers or others. And, to enforce it, the only remedy available is an equitable action for foreclosure in which the debt and the lien must be established. Tex.Jur. 43a, Vendor and Purchaser, supra, §§ 391, 401, 406, 415."

We hold that Davis did not meet his burden of proving that Scull was not an innocent purchaser; that it was his burden and he having failed to submit issues and obtain findings that Scull, the holder of legal title, took same with notice of Davis' equity, Scull is entitled to have judgment here rendered in his behalf. That portion of the judgment which established a lien against the 1200-acre Reeves County property of appellant Scull is reversed, and judgment is here rendered that Davis has no lien against such property.

It follows that our holding that Davis has no lien on the land in question obviates the necessity to pass on appellee Davis' cross points as to the allowance of certain credits to Scull in preference to such lien.

We entertain some doubt as to the jurisdiction of this court to pass on the majority of the points of error sought to be presented by Bice and Motel Magill; this, for the reason that such points relate to matters which are not the subject of the appeal and are severable. It has long been held that where an appeal has been taken by an appellant, an appellee may urge cross points without taking an independent appeal. Bowman v. Puckett, Tex.Civ.App., 185 S.W. 2d 228; reversed on other points, 144 Tex. 125, 188 S.W.2d 571; Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427. But such right is subject to the limitation that such cross points must affect the interest of the appellant or bear upon matters presented in the appeal. Bowman v. Puckett (supra); Vector Corp. v. First State B. & T. Co. of Port Lavaca, Tex.Civ.App., 430 S.W.2d 536. If a judgment is severable, the appellant may appeal from a part only thereof, and when that is done the appellee will not be heard to complain of any matters falling wholly within the portion of the judgment not brought up for review by appellants. Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960; Dallas Electric Supply Co. v. Barnum Co. (supra); Humble Oil & Refining Co. v. Fantham, Tex.Civ.App., 268 S.W.2d 239 (err. dism.). As to "points", "counterpoints", and "cross points", their definition and function, see Jackson v. Ewton, 411 S.W.2d 715 (Tex.1967). In the case before us, all parties except TWI gave notice of appeal, and Scull, Bice and Magill filed motions for new trial, but only Scull filed an appeal bond. He appears here as appellant, and the subject of his appeal is the lien allowed to Davis. Davis appears as appellee and confines his appeal to the same subject matter. Bice and Magill denominate themselves "appellees", though all issues were determined against them, and they present some 25 points of error which they call "counter-points". As indicated, many of these points do not relate to the

subject matter of the appeal, and Bice and Magill have posted no bond that they will abide by the decision of the appellate courts. The manner of presentation of these points makes it difficult to draw a clear-cut line between those applicable and inapplicable to the subject matter, and whether severable or not, so that we have determined to allow Bice and Magill to ride the coat-tails of the appellant, and to consider all of their "counter-points".

A careful consideration of all points of error presented by Bice and Motel Magill leads to the conclusion that no error of reversible magnitude is presented, and such points are accordingly overruled.

The judgment of the trial court is in part reversed and rendered, and in part affirmed.