The TRAVELERS INDEMNITY COMPANY, Appellant,

v.

POLLARD FRIENDLY FORD COMPANY, Appellee.

No. 8453.

Court of Civil Appeals of Texas, Amarillo.

July 15, 1974.

Crenshaw, Dupree & Milam, J. Orville Smith, Lubbock, for appellant.

Brock, Waters & Galey, Charles E. Galey, Lubbock, for appellee.

ELLIS, Chief Justice.

In this suit on an insurance policy, the trial court entered judgment in favor of Pollard Friendly Ford Company, plaintiff-appellee, against the Travelers Indemnity Company, defendant-appellant, awarding the plaintiff recovery under an "Extra Expense Insurance" endorsement attached to and forming a part of the basic insurance policy. Affirmed.

On May 11, 1970, a tornado struck the City of Lubbock, Texas, damaging property located therein belonging to, and causing certain interruption of the usual operations of, Carlsbad Auto Company, Inc., dba

Pollard Friendly Ford Company, hereinafter referred to as Pollard. Suit was brought by Pollard for the $50,000 policy limits of an insurance policy and endorsement termed "extra expense" issued by The Travelers Indemnity Company, hereinafter referred to as Insurer. The trial court, sitting without a jury, awarded judgment for Pollard in the amount of $30,471.65 plus interest from the date of judgment. Findings of fact and conclusions of law were filed by the trial court and both parties excepted to the judgment and gave notice of appeal.

The insurance contract in question is one of indemnity for "extra expenses" incurred in order to continue as nearly as practicable the normal conduct of the insured's business during the period of restoration following a direct loss by a named peril to buildings or contents thereof used by insured. In the instant case, the property covered is all locations of operations of Pollard in Lubbock, Texas, and occupied as a full-service automobile dealership. It is not disputed that the tornado is a covered peril or that Pollard suffered damage as a result of that tornado. The dispute arose as to the extend of the Insurer's liability under the policy and endorsement for certain expenses and losses incurred by Pollard.

Among other conclusions of law, the trial court filed the conclusion that the insurance policy and the endorsement thereto were ambiguous and therefore subject to the rules of construction applicable to insurance contracts, i.e., in the event of ambiguity, the policy and its endorsements should be construed in a light most favorable to the Insured, so long as not unreasonable, and that Pollard was entitled to judgment for the sum of $30,471.65 with interest from the date of judgment. The findings of fact upon which the judgment was predicated set out that the necessary expenses in excess of those that would normally have been expended by the plaintiff during the period in question had no loss occurred included: (1) $10,860.00 in expenses for watch protection; (2) $5,803.25 in expenses for cleaning up debris; (3) $10,732.05 for extra compensation paid employees as a result of longer hours worked; (4) $1,918.80 for the extra meals for employees as a result of longer hours worked; and (5) $1,157.55 in expenses for obtaining property for temporary use. The trial court further concluded that under the policy of insurance in question it was not necessary for plaintiff to conduct its "normal operations," but only to continue as nearly as practicable the normal conduct of its business. Since it was impossible to continue the same operations as if the loss had not occurred, the court concluded that plaintiff had complied with the provisions of the policy, and therefore plaintiff was entitled to recovery of its damages under the terms and provisions of the policy as so construed.

Appellant complains of the judgment, with respect to the allowance of expenses for watch protection, debris cleanup, extra compensation for employees and extra meals for employees, by eight points of error. The portion of the judgment relating to expenses for obtaining property for temporary use is not complained of by appellant. The contentions are that the disputed items comprising the judgment are not within the coverage of the extra expense insurance endorsement as a matter of law or that there is insufficient evidence to support the findings and conclusions that such items are within the coverage of the extra expense endorsement.

The basic policy in issue is a standard fire and extended coverage policy with an endorsement entitled "Extra Expense Insurance." The endorsement has the following provisions over which this dispute has arisen:

"1. *$50,000*. On the necessary Extra Expense incurred by the insured in order to continue as nearly as practicable the normal conduct of the insured's business following damage to or destruction by

any of the perils insured against of the building(s) or additions thereto or contents thereof, situate 810 Texas Ave., Lubbock, Texas[1] . . . and occupied as auto parts . . . .[2]

"2. If the above described building(s) or additions thereto or contents thereof are destroyed or so damaged by any peril insured against occurring during the term of this policy as to necessitate the incurrence of Extra Expense (as defined in this form), this Company shall be liable for the Extra Expense so incurred, for not exceeding such length of time, herein referred to as the 'period of restoration,' commencing with the date of the loss by any peril insured against and not limited by the date of expiration of this policy, as shall be required with the exercise of due diligence and dispatch to repair, rebuild, or replace such part of said buidling(s) or additions thereto or contents thereof as may be destroyed or damaged."

*     *     *     *     *     *

"5. The term 'Extra Expense' wherever used in this form, is defined as the excess (if any) of the total cost during the period of restoration chargeable to the conduct of the insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred, the cost in each case to include expense of using other property or facilities of other concerns or other necessary emergency expenses. In no event, however, shall this Company be liable under this policy for loss of income, nor for Extra Expense in excess of that necessary to continue as nearly as practicable the normal conduct of the insured's business, nor for the cost of repairing or replacing any of the described property that has been damaged or destroyed by any peril insured against, ex-

cept cost in excess of the normal cost of such repairs or replacements necessarily incurred for the purpose of reducing the total amount of Extra Expense; liability for such excess cost, however, shall not exceed the amount by which the total Extra Expense otherwise payable under this policy is reduced. This Company shall also be liable for Extra Expense incurred in obtaining property for temporary use during the period of restoration necessarily required for the conduct of the insured's business; any salvage value of such property remaining after resumption of normal operations shall be taken into consideration in the adjustment of any loss hereunder.

"6. SPECIAL EXCLUSIONS: This Company shall not be liable for Extra Expense occasioned by any ordinance or law regulating or prohibiting construction or repair of buildings, . . . nor for the cost of compiling books of record or other documents, nor for any other contingent or remote loss.

"7. INTERRUPTION BY CIVIL AUTHORITY: This Company shall be liable for actual loss sustained as covered hereunder, during the period of time, not exceeding two weeks after date of loss by any peril insured against, while access to the premises described is prohibited by Civil Authority, but only when such order is given as a direct result of loss, by any peril insured against, in the vicinity of said premises.

"8. The word 'normal' however modified, wherever used in this contract shall be construed to mean the condition that would have existed had no loss occurred."

*     *     *     *     *     *

"10. As soon as practicable after any loss, the insured shall resume complete or partial business operations of the

---

1. It was stipulated that this provision should read, "situate at the operations of Pollard Friendly Ford Company, at all its locations in Lubbock, Texas."

2. It was stipulated that this provision should read, "occupied as a full service automobile dealership."

property herein described and, in so far as practicable, reduce or dispense with such extra expenses as are being incurred."

Insurer urges that the policy and endorsement are unambiguous, and thus not subject to construction as urged by the Insured. The Insurer's contentions are that: (1) the losses sustained are covered by other types of available insurance; (2) its liability is limited to extra expenses incurred while Pollard was actually engaged in the business of a full-service automobile dealership; and (3) its liability is limited to expenses incurred for temporary substitute facilities and equipment necessary for Pollard to engage in the normal conduct of its business, i.e., selling automobiles and servicing automobiles. Such contentions are based upon terms of the policy referring to extra expenses incurred "in order to continue as nearly as practicable the normal conduct of the insured's business," costs "chargeable to the conduct of insured's business" and the various exclusions and limitations set out in the endorsement.

It is undisputed that following the May 11, 1970 tornado, civil authorities blocked off the area wherein Pollard's operations were located and for a period of thirteen days customers were denied access to Pollard's business. During such time it was impossible for Pollard to conduct its business in a normal fashion, although it carried on activities in furtherance of such business, R. N. "Dick" Pollard, president and general manager of Pollard, testified that it was during this period that a major portion of the expenses awarded by the trial court were incurred.

■ Consideration of an insurance policy, as with all contracts, requires that it be viewed from its four corners and in its entirety. General American Indemnity Company v. Pepper, 161 Tex. 263, 339 S. W.2d 660 (1960). When an insurance policy is so viewed, if it is susceptible to more than one meaning, the rule of strict construction against the insurer and in favor of the insured is applicable with all doubts resolved against the insurer and for the insured. Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953); Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379 (1951). After a careful examination of the policy and endorsement in question, we have determined that it is susceptible to more than one meaning; therefore, it is ambiguous and the rule of strict construction shall apply, as the trial court so concluded.

In the extra expense endorsement here involved, the adjective "normal" is defined as meaning the condition that would have existed had no loss occurred. Throughout the endorsement "normal" is used to modify the *conduct* of insured's business; it is not used to modify business, i. e., the conduct of insured's *normal* business. Therefore, it would be reasonable to conclude that Pollard was not required to conduct its "normal" business. Paragraph one of the endorsement limits the scope of Insurer's liability to those extra expenses incurred by Pollard "in order to continue *as nearly as practicable* the normal conduct of insured's business." Paragraph 5 defines "extra expenses" as "the excess of the total cost during the period of restoration chargeable to the conduct of the insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred." The cost referred to is further defined to include "expense of using other property or facilities of other concerns or other necessary emergency expenses." Therefore, a reasonable construction would be that Insurer's liability extends to those expenses incurred in addition to the "normal" expenses which were necessary emergency expenses chargeable to the conduct of Insured's business when incurred in order to continue as nearly as practicable the normal conduct of Insured's business.

■ In this case, normal business being impossible for thirteen days, cleaning

up the debris, preserving the remains of the operation, and making preparations for reopening for business would appear to be acts "in order to continue as nearly as practicable the normal conduct of insured's business." In addition, although the cost described within paragraph 5 refer to expenses of using other property or facilities, and an example is recited that the liability of Insurer is extended to include extra expenses incurred in obtaining property for temporary use, it is not limited thereto, because of the clause, "or other necessary emergency expenses." Such clause expands the liability of Insurer to those other necessary emergency expenses, and it is immaterial to our consideration whether the expenses and losses could be covered by other types of policies of insurance available. Our concern is to determine the coverage encompassed under this policy by application of the recognized rules of construction.

Pollard testified that $10,860 was expended for watch protection from May 11, 1970, to August 21, 1970. Such protection was reasonably necessary because doors could not be locked and windows were open and tools, parts, etc., were susceptible to loss by theft. The expenses were incurred by paying employees whose ordinary incomes were operating expenses rather than fixed expenses; therefore, their incomes would not have been expenses to Pollard during a time when no automobiles were being sold or repaired. The expenses were in addition to normal expenses incurred as a result of the direct damage to the buildings. Pollard further testified that these same employees were used in the same manner in conducting the cleanup process necessary to prepare the premises for customer service. The amount attributable to the cleanup of the debris was $5,803.25.

Further, according to Pollard's testimony, certain key employees were paid salaries and their salaries continued throughout the period of restoration; however, by his testimony and the testimony of Arvil Walsar, service manager of Pollard, and Hoyt Starr, sales manager of Pollard, these employees were required to work up to eighteen hours a day during this period. Because of the additional hours worked, Pollard paid extra compensation in the amount of $10,732.05 to these employees. Pollard further testified that during the time access to the operations was blocked, Pollard purchased meals for employees in order to reduce the time spent away from the jobsite by the employees. Access being difficult and time consuming, it was necessary to purchase meals to increase the productivity of the employees. It was not a matter of expenses of maintaining these employees on a standby for some future operation of an automobile business, but these expenses were payments over and above "normal" in order to continue the business on as nearly a normal basis as possible under the circumstances of the work to be done then and there in and about that business in its then abnormal status.

During the period of time that customers were unable to reach the premises of Pollard, the business entity, Pollard Friendly Ford, was never abandoned or terminated but continued its operation as nearly as practicable under the circumstances. Although the normal business, i. e., selling and servicing automobiles was impossible, expenses were necessarily incurred in the furtherance of the business. Thus, the tenor of the "extra expense insurance" coverage was not for the cost of rebuilding or restoring the physical structure on the premises, but primarily for securing extra facilities and for "necessary emergency expenses" of a concrete or practical nature to compensate for extra expenses incurred in getting the business back in normal operation at the earliest practicable time. There was never a situation of abandonment or a status of non-conduct of the insured's business enterprise. Apparently the court construed the provisions of the endorsement as being referable to those essential and practical expenses necessary to expedite Pollard's transition from a status of conducting its business as nearly normal as practi-

cable to that of its normal operation of business subsequent to the making of repairs and replacements occasioned by the tornado. Thus, under the court's interpretation of the endorsement, the allowable expenses included and was limited to watch protection of the property, cleanup of debris, extra compensation for employees, extra meals and property obtained for temporary use.

█ It is noted that paragraph 6 of the endorsement excluded, among other items, cost of compiling books of record or other documents, as well as any other contingent or remote loss. No allowance was made for outside professional consultants, advertising expenses, or legal or CPA expenses. Pollard admitted that a portion of the consultant's services was in connection with the appraisal of automobiles in connection with the insurance settlement which clearly was not related to the normal conduct of the business, and the court apparently did not regard the consulting services as necessary emergency expenses of the limited type contemplated by the extra expense endorsement of the policy. The advertising expenses, although used for a different type of advertising, referred to as "status" advertising rather than normal sales advertising, was admittedly no more than the normal amount for advertising expenses. Also, the expenses claimed for legal and CPA services were primarily in connection with obtaining an SBA loan. Pollard admitted that because of the condition of his business prior to the tornado, he had planned to secure an SBA loan, and the only difference in this respect was that due to the tornado he applied for a larger loan than otherwise planned. In view of the "emergency" type of expenses apparently contemplated by the extra expense endorsement, it is our opinion that the court properly excluded the items other than those specifically set out in its findings as a basis for the judgment entered.

We notice that Pollard claimed and the court found that the fixed expenses for May, June and July of 1970 were in excess of normal expenses by the sum of $47,485,

all of which were attributable to the tornado. However, under the trial court's interpretation of the extra expense endorsement and a consideration of the endorsement from its four corners in view of all the facts and circumstances, the policy coverage did not embrace all of the items comprising the $47,485 "fixed expenses" which were above normal for the period involved. Since the "extra expense insurance" was directed toward coverage of "necessary emergency expenses," and securing property for temporary use, as above set out, it is our opinion that although such "fixed expenses" were in fact above normal to the extent above indicated, yet the policy, as construed by the court, and with which we agree, did not cover all of such "fixed expenses" as found, but only those extra expenses which included the securing of property for temporary use or were . embraced under *"necessary emergency expenses"* and which were specifically allowed by the court in its judgment in the total sum of $30,491.65.

After a careful review of the record, we have concluded that there is sufficient evidence of probative force, to support the trial court's findings and conclusions that the respective items of expenses awarded to Pollard constitute the extra expenses properly within the coverage of the policy and extra expense endorsement. Accordingly, appellant's points 1–8 are overruled.

█ Appellee excepted to the judgment and gave notice of appeal; however, an appeal bond was never filed. Appellant now contends that the cross-points contained within appellee's brief are not before this court for review because the appeal was never perfected. It is well established that two separate distinct appeals from the same judgment need not be perfected in order for the court of civil appeals to consider appellee's cross-points, unless the judgment is definitely severable and appellant strictly limits the scope of his appeal to a severable portion thereof. Dallas Elec. Sup. Co. v. Branum Co., 143 Tex. 366, 185 S.W. 2d 427 (1945); See Rule 420, Texas Rules of Civil Procedure. Appellant has not limit-

ed the scope of its appeal, and the cross-points raised by appellee relating to prejudgment interest and extent of liability of insurer affect the interest of the appellant and bear upon matters presented in this appeal of the case as a whole rather than mere segmented portions thereof. See Rule 353, T.R.C.P.; Scull v. Davis, 434 S.W.2d 391 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.). Therefore, we hold that appellee's cross-points are properly before the court for review.

By its first cross-point, appellee contends that the trial court erred by failing to hold that Pollard had damages in excess of $50,000 within the coverage of the policy and extra expense endorsement, and therefore, Pollard should have judgment for $50,000. The contention is based primarily on the disallowance by the trial court of claimed losses under paragraph 7 of the extra expense endorsement, "Interruption By Civil Authority." Appellee contends that it should recover "actual losses sustained" during the thirteen days that access to the business was blocked by civil authorities. Such losses were calculated on the basis of a proration of the fixed expenses for the month of May, 1970, less any duplicated extra expenses. The amount in controversy for these expenses is the sum of $22,323.65. Such sum includes rent, salaries, telephone and other fixed expense items of a continuing nature prorated for the 13 day period.

■ In our opinion such items are not within the coverage of the policy and endorsement in question. It is true that paragraph 7 is an extension of the liability of insurer; however, the extension is in the nature of an extension of the property covered rather than an extension of the risk of loss. The term "actual loss sustained" is modified and limited by the words "as covered hereunder." Therefore, the entire paragraph, when read with reference to the endorsement as a whole is reasonably susceptible to only one meaning. In order to be covered by the preceding paragraphs, extra expenses must be incurred by the insured as a result of a di-

rect loss, by any of the named perils, to the buildings or additions thereto or contents thereof. Paragraph 7 extends the liability of paragraph 1 to the situation where insured's buildings do not suffer a direct loss, but the area is blocked off by civil authorities thereby denying access to insured's business by its customers. This is not the situation in the case at bar; therefore, paragraph 7 is not applicable and the claimed "normal fixed expenses" are not within the ambit of the definition of extra expenses incurred in order to continue as nearly as practicable the normal conduct of the insured's business.

Although the appellee has used three different methods of calculating its damage in its brief, without the above $22,323.65 claimed under paragraph 7, none of the methods result in total damages in excess of $50,000. Under the first method, appellee combines the total of the above mentioned sum of $47,485 found as the fixed expenses in excess of normal fixed expenses and the $22,323.65 of actual loss sustained while blocked off, and thus arrives at a total sum of $69,808.65, which is in excess of $50,000. Although the court found that such sum of $47,485 represented the fixed expenses in excess of normal fixed expenses, as previously stated, it is our opinion that under the interpretation of the policy adopted by the court such extra expense endorsement only covers the necessary emergency expenses ($30,471.75). Also, as above set out, the sum of $22,323.-65 representing loss while "blocked off," is not applicable. Thus, it is our opinion that appellee's first method above set out as to total loss is inapplicable.

Under the second method, the appellee includes the various items of emergency expenses allowed by the court in the total sum of $30,471.75, plus certain additional items designated as emergency expenses including advertising, professional consulting services, legal and CPA services and certain other expenses incurred and prorated while blocked off, including rent, salaries, and telephone, which, if allowed, would have been attributable as an allowance un-

der paragraph 7, making a total of $58,418.18. In view of our construction of the policy, these sums representing items over and above the "necessary emergency expense" in the total sum of $30,471.75, which have been determined as covered by the extra expense endorsement, are not allowable. Thus, the $50,000 loss claimed under the second method would not be applicable.

Under the third method, the sum representing the emergency items in the total sum of $30,471.75, plus the sum of $22,323.-65 claimed as actual losses while "blocked off," makes a total claim of $52,795.40. Since we have determined that such sum of $22,323.65, which is attributable to appellant's claims pursuant to paragraph 7 is not allowable, only the sum of $30,741.75 remains, which represents necessary emergency items allowed under the court's judgment. Thus, the third method is inapplicable.

In view of the foregoing, we do not regard any of the three methods as a basis to support the appellee's contention that it is entitled to the maximum recovery of $50,000 allowed under the extra expense endorsement. Accordingly, appellee's first cross-point is overruled.

By its second cross-point appellee contends that it was error for the trial court to fail to award prejudgment interest from the date of denial of liability by the insurance company, rather than interest only from the date of the judgment. In its pleadings, appellee sought interest from the date of the tornado, along with a prayer for general relief. From a review of the circumstances of this case, it is clear that the damages were not determinable at the time of the injury occasioned by the tornado. The court found that the contract was ambiguous, with which finding we agree, and the parties urged their respective contentions with respect to the construction of the policy provisions as well as the factual matters as to whether specific expense items were in fact "necessary emergency expenses" or "extra expenses"

within the court's interpretation of the policy, or whether the facts justified the recovery of the full limit of $50,000. All of these various matters of interpretation and factual issues were in serious and genuine dispute and relatively uncertain until finally resolved by the court's interpretation of the contract and its factual determination as a basis for the award finally made by the judgment.

In the case of Metal Structures Corp. v. Plains Textiles, Inc., 470 S.W.2d 93 (Tex. Civ.App.—Amarillo 1971, writ ref'd n. r. e.), it was pointed out that if the measure or claim is determinable at the time of the injury, prejudgment interest is properly awardable; if not, interest proceeds from the date of judgment. Also, in the case of Shupack-Solnick, Inc. v. Seaboard F. & M. Ins. Co. of N. Y., 322 S.W.2d 552 (Tex. Civ.App.—Amarillo 1959, no writ), involving a judgment under a fire insurance policy, the court held that since "there was a dispute as to damage and necessity for closing of the store, the parties could not agree as to any amount of damage and no award was made until final judgment was entered," the court's allowance of interest only from the date of judgment was correct. In Dow Chemical Company v. Dixie Carriers, Inc., 463 F.2d 120 (5th Cir., 1972), cert. denied, 409 U.S. 1040, 93 S.Ct. 525, 34 L.Ed.2d 490 (1972), in an appeal from the Southern District of Texas, the appellate court upheld a denial of prejudgment interest on the grounds that, under the facts and circumstances of the case, there was a serious and genuine dispute regarding ultimate liability contested in good faith and relative uncertainty as to many of the legal and factual issues to be resolved.

In the instant case it was not clearly established that the measure of recovery was fixed by conditions existing at the time of the injury. There were alternatives available to the insured with respect to his conduct of the business following the tornado, i. e., whether to move the business to another location, or seek to retain and restore the business and premises at the original

**384**

location, all of which were involved and constituted significant factors in making a determination of the existence and the extent of the liability. We do not believe that the extent of liability for "extra expenses," a variable depending upon many factors with respect to alternatives concerning the manner of seeking to conduct the business, could be determined at the time of the damages resulting from the tornado. Thus, we believe that this case is distinguishable from the various cases cited by the appellee dealing primarily with outright physical losses of property rather than a matter susceptible to variables such as "extra expenses" involved in this case. The appellee's second cross-point is overruled, and it is our opinion that the trial court did not err in denying recovery of prejudgment interest. This holding pretermits our passing upon the appellant's contentions concerning the propriety of appellee's pleadings with respect to its claim for prejudgment interest.

For the reasons above stated, the judgment of the trial court is affirmed.