William F. STENDEBACH, Appellant,

v.

David Kirk CAMPBELL and Billy Joe Campbell d/b/a Warehouse Carpets, Appellees.

No. 08–83–00149–CV.

Court of Appeals of Texas, El Paso.

Jan. 11, 1984.

Rehearing Denied Feb. 29, 1984.

Wayne Pearson, Catherine Gerhauser, Burford & Ryburn, Dallas, for appellant.

Dale Wootton, Russell W. Schell, Thompson, Coe, Cousins & Irons, Dallas, for appellees.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ., concur.

## OPINION

OSBORN, Justice.

William F. Stendebach appeals from an adverse judgment entered in a jury case awarding damages based upon an alleged misrepresentation of an insurance policy issued to David and Billy Campbell. We reverse and remand for a new trial.

In 1977, David and Billy Campbell became partners in a business known as Warehouse Carpets. They leased a building in Carrollton, Texas, and purchased a substantial inventory of carpet. David Campbell contacted William Stendebach, his insurance agent, to obtain insurance to protect their inventory from loss. He testified that he told the agent he needed to get "full coverage" on the contents. He said about a week later the agent called back and told him that he (the agent) got him full coverage with the exception of theft coverage.

According to Mr. Stendebach, Campbell called him and said he needed contents coverage. He testified that about a week later he called Campbell and told him that he could get fire and extended coverage which would include windstorm, hurricane and hail coverage, but that this did not cover theft or other broad losses. He said he did not tell Campbell that this would provide "full coverage." On October 15, 1977, a Fire and Extended Coverage Policy was issued with total insurance of $60,-

000.00. On May 21, 1978, the roof on the leased building collapsed and there was extensive damage to the carpet inventory. A claim was made against the insurance company and it denied the claim as not being within the risk insured. The Campbells settled their claim against the building owner and roofing contractor for $40,-000.00 and then filed suit against Stendebach alleging misrepresentations as to the coverage provided in the policy which he obtained for the Campbells.

The jury's answers to the issues submitted were basically as follows:

1. Did Stendebach represent that the policy would confer or involve rights or remedies which it did not have? **No**
3. Did Stendebach represent that the policy had characteristics, uses or benefits which it did not have? **No**
5. Did Stendebach represent that the policy was of a particular standard, quality or grade when it was of another? **No**
7. Did Stendebach misrepresent the terms, benefits or advantages promised thereby of the policy issued? **Yes**
8. Was this representation a producing cause of any damage to the Campbells? **Yes**
9. The amount of damages to the carpet inventory? **$23,000.00**
10. The amount of attorney's fees for the Campbells? **$18,750.00**
11. Did the actions complained of by the Plaintiffs result from bona fide error notwithstanding the use of reasonable procedures to avoid the error? **Yes**
12. Was the suit brought in bad faith or for harassment? **No**

The trial court disregarded the answer to Issue No. 11, trebled the actual damages and after giving credit for the amount obtained in the prior settlement, entered judgment for $29,000.00 plus attorney's fees.

The Appellant presents twenty points of error, contending first that the judgment should be reversed and rendered and in the alternative that it should be reversed and the case remanded for a new trial. Issues 1, 3 and 5 were based upon the provisions of the Tex.Bus. & Com.Code Ann. sec. 17.46(b) 12, 5 and 7 respectively. Issue No. 7 was based upon Tex.Ins.Code art. 21.21, sec. 4(1). Issue No. 11 was based upon the Tex.Bus. & Com.Code sec. 17.50A as it existed prior to the 1979 amendment. The bona fide error defense was meant to apply only to clerical errors, such as typographical errors or mistakes in computing a figure. Wells, "What Hath the Legislature Wrought? A Critique of the Deceptive Trade Practices Act as Amended in 1977," 29 Baylor L.Rev. 526 at 534 (1977); *Casillas v. Government Employees Credit Union of El Paso*, 570 S.W.2d 57 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.). Such defense has no application in this case and the trial court did not err in disregarding the answer to Issue No. 11. Point of Error No. One is overruled.

The next four points of error contend the trial court erred in trebling the actual damages before reducing those damages by the amount of the prior settlement. It is argued that under the one satisfaction doctrine of *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935), Appellees should not be entitled to recover $40,000.00 in a prior settlement and then recover in this case where the jury found the actual damages to be less than the amount received in the prior settlement. Also see: *T.L. James and Company, Inc. v. Statham*, 558 S.W.2d 865 (Tex.1977). But, in *Providence Hospital v. Truly*, 611 S.W.2d 127 (Tex.Civ.App.—Waco 1980, writ dism'd), the court required that the actual damages be trebled before giving credit for the amount of a prior payment. The court in that case concluded that this was the only way a plaintiff could recover the full award required by the Deceptive Trade Practice Act. We agree. Points of Error Nos. Two through Six are overruled. We have considered the other rendition points and have concluded that they may not be sustained. There is some evidence to support the jury's answers to Issues Nos. 7 and 8 which formed the basis for the trial court's judgment.

We do conclude that the jury's answers are in fatal conflict and we sustain Point of Error No. Nineteen. First, the

jury found in Issue No. 7 that Stendebach misrepresented the "benefits" of the policy issued, but in Issue No. 3 there was a failure to find that Stendebach represented that the policy had "benefits" which it did not have. This is a clear conflict. Although the jury found Stendebach misrepresented the terms, benefits or advantages promised of the policy issued, at the same time they failed to find that he represented that the policy would confer or include rights or remedies which it did not have. The terms, benefits and advantages inquired about in Issue No. 7 could be nothing more nor less than the rights and remedies inquired about in Issue No. 1 and the benefits inquired about in Issue No. 3. The same evidence which was presented to support the answer to Issue No. 7 was also presented to support the answers to Issues Nos. 1, 3 and 5. All the issues are in general terms, tracking the various statutes involved, and none is a more detailed, specific issue which controls over a general issue. *Compton v. Polonski*, 567 S.W.2d 835 (Tex.Civ.App.—Corpus Christi 1978, no writ). All of the issues and all of the answers revolve around the conflicting evidence about the request for "full coverage" on the carpet inventory and the agent's response as to what would be provided.

Most important is the fact that all issues inquire about the policy actually issued. This is not a case where some of the issues inquire about a policy issued and others about a policy promised. All issues are centered on the one policy which was issued to the Campbells. It is clear that policy provided for fire and extended coverages. If Stendebach did not represent that such policy would confer rights or remedies which it did not have or benefits which it did not have, how could he have misrepresented its terms, benefits or advantages?

Following the dictates of *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985 (1949), if we disregard the answer to Issue No. 7 about the misrepresentations made by the agent, then judgment must be entered for Appellant, but if we disregard the answers to Issues Nos. 1,

3 and 5 about the representations made by the agent, then judgment must be entered for Appellees. We note that in the Dunn case, as in our case, the two conflicting answers resulted from a "yes" answer and a "no" answer. In analyzing those answers, the court said:

[T]he result was that the jury in answer to Special Issue No. 15 found in effect that the respondent was negligent but in answer to Special Issue No. 16 found the contrary.

Having concluded that the issues are in fatal conflict, we sustain Point of Error No. Nineteen and reverse and remand the case for a new trial.

■ The Appellees present several cross points, one of which contends that the trial court erred in granting the motion for directed verdict in favor of Fireman's Fund Insurance Company, Employers Casualty Company, National General Agencies and Ligon, Gump & Ligon, Inc. We have concluded that the issue raised by that cross point may not be considered and the judgment in favor of those defendants has become final. The Appellees did not object or except to the judgment which was entered in their favor. They did not file an appeal bond to perfect an independent appeal as to any of the above mentioned insurance companies or insurance agents.

■ Their cross points may not now raise issues about a judgment which Appellees did not except to and concerning a part from which the Appellant did not appeal. *Dietz v. Dietz*, 540 S.W.2d 418 (Tex.Civ.App.—El Paso 1976, no writ); *Scull v. Davis*, 434 S.W.2d 391 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.).

The judgment of the trial court is reversed and the case is remanded for a new trial as to Appellees' claims against the Appellant, but that part of the judgment denying recovery from Fireman's Fund Insurance Company, Employers Casualty Company, National General Agencies and Ligon, Gump & Ligon, Inc. is affirmed.