**Francois ILLEY, Appellant,**

v.

**Robert HATLEY, Appellee.**

**No. 04–83–00476–CV.**

Court of Appeals of Texas, San Antonio.

March 13, 1985.

Rehearing Denied April 30, 1985.

Steven D. Brown, San Antonio, for appellant.

A.J. Hohman, Jr., James E. Hope, Hope, Henderson, Hohman & Georges, John F. Tafolla, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and BUTTS, JJ.

## OPINION

BUTTS, Justice.

Defendant Francois Illey appeals from a judgment in which the trial court ordered that plaintiff Janice Hatley as next friend of Robert Hatley recover the sum of $3,606,000.00 for personal injuries incurred; issued a directed verdict in favor of David Merrick, a passenger in the car being driven by Illey; and overruled plaintiff's motion to enter judgment against defendant Slush Puppie-Alamo City, Inc., the corporate employer of both Merrick and Illey. Trial was by jury. We affirm conditioned on the filing of a remittitur.

The evidence shows a series of events involving three vehicles in the area of Loop 410 in San Antonio (a Chevrolet Nova with plaintiff Hatley as driver and Robert Garza as passenger; a Datsun 280Z with Jim McFadden as driver and Sam Guido as passenger; and a Chrysler Cordoba with defendant Illey as driver and defendant Merrick as passenger), culminating in an incident in which the Cordoba struck Hatley, causing serious injuries.

Hatley, Garza, McFadden and Guido have been friends since high school, some years before. On this night they met in the Spurs nightclub, had a few beers, and then drove to the Wrangler Bar. At about that time, Illey and Merrick discussed company business at the headquarters of Slush Puppie, went to a club where each had a couple of drinks, and decided to go from there to Maggie's Restaurant for a late night "breakfast."

The first confrontation between defendants Illey and Merrick in the Cordoba and McFadden and Guido in the 280Z occurred at this time. Illey attempted to get on Loop 410 at the Perrin-Beitel entrance, but either because he went the wrong way on the access road, or his car stalled, he had difficulty negotiating the entrance, causing traffic to back up behind him. McFadden and Guido in the 280Z were several cars behind the Cordoba but when they got on the highway, they passed the Cordoba and Guido shouted obscenities and "shot the finger" at the occupants.

The witnesses each contended that those in the other car tried to run them off Loop 410 going westbound. Illey and Merrick additionally testified that their car was hit by an object thrown by someone in the 280Z.

In any event, it is undisputed that both vehicles pulled over to the shoulder of Loop 410, the 280Z behind the Cordoba. Hatley, in the Nova, then parked behind his friends in the 280Z. McFadden alighted and struck Merrick through a partially opened car window. Merrick testified that the nose and side pieces of his glasses were broken. It is disputed how many times Merrick was struck or whether he was struck with a closed fist or open hand. Merrick testified three of the four others beat him about the head, causing his nose to bleed.

After this altercation, it is undisputed that McFadden and Guido followed by Hatley and Garza exited Loop 410 at the airport exit, stopping at an abandoned filling station at the corner of the loop access road. Illey and Merrick observed the 280Z

driving into the abandoned filling station and followed them to obtain the license number.

At least two of the others were outside their vehicle. Illey, but not Merrick, testified that McFadden came to the driver's side of the Cordoba and kicked the tire and banged on the car. Merrick stated he did not see this occur. Illey testified that the one banging on the Cordoba stepped back and put both hands behind his back, causing Illey to think that he was reaching for some weapon. This, he said, caused him to fear for his safety and well-being. Consequently he accelerated the Cordoba. It struck Hatley, propelling him over the hood onto the windshield, which broke. Unconscious, Hatley rolled off the car, landing underneath the left rear fender of his own car. The Cordoba also grazed Garza on the hip as he partially vaulted over the Cordoba, which then circled the gas station two or three times. Illey and Merrick went back to their office for another car and did not call the police. Hatley was rushed to the Bexar County Hospital.

Hatley received head injuries necessitating his hospitalization for about three months. Surgical resident, Dr. Richard Kokemoor, performed two emergency craniotomies to stop the bleeding. Two to three ounces of his brain tissue were removed during the operation. Hatley is paralyzed on his right side and is bound to a wheel chair although he is able to walk short distances with considerable effort. His mental capacity was reduced from that of a 27 year old functioning accountant to that of a fifth grader.

By its answers to special issues the jury found: (1) Illey was negligent and such negligence was a proximate cause of Hatley's injuries; (2) Hatley was not negligent; (3) 100% of the negligence was attributed to defendant Illey; (4) Illey was not engaged in the service of Slush Puppie-Alamo City, Inc. and in furtherance of its business; (5) Hatley should be compensated $2,575,000.00 for his injuries, $31,000.00 for his past medical expenses, and $1,000,-000.00 for his future medical expenses.

Illey brings ten points of error. In points of error one through six, he contends the trial court erred in refusing to submit defendant's requested instructions on (1) sole proximate cause, (2) sudden emergency, and (3) provocation. In points of error seven through ten, Illey argues that the judgment in the amount of $1,000,-000.00 for future medical expenses was based on legally and factually insufficient evidence. Hatley brings four crosspoints.

## JURY INSTRUCTIONS

We must determine whether defendant was entitled to his requested jury instructions on sole proximate cause, sudden emergency and provocation. TEX.R. CIV.P. 277 provides that the trial court shall submit only those instructions "as shall be proper to enable the jury to render a verdict." The sufficiency of explanations is left largely to the discretion of the trial judge. An appellate court's standard of review is abuse of discretion. *Charter Oaks Fire Insurance Co. v. Taylor*, 658 S.W.2d 227, 230 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Harrison v. Harrison*, 597 S.W.2d 477, 487 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.).

### 1. SOLE PROXIMATE CAUSE.

Defendant requested the following instruction on sole proximate cause:

There may be more than one proximate cause of an event, but there can be only one sole proximate cause. If an act or omission of a third person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause.

Sole proximate cause pertains to neither the conduct of the plaintiff nor that of the defendant but to a third party, whose conduct would be *solely* causative of the occurrence at issue. *Herrera v. Balmorhea Feeders, Inc.*, 539 S.W.2d 84, 86–87 (Tex. Civ.App.1976). In the case at bar, there is no evidence to show that the accident resulted solely from the acts of a third party. *Smith v. Red Arrow Freight Lines, Inc.*, 460 S.W.2d 257, 259 (Tex.Civ.App.—San

Antonio 1970, writ ref'd n.r.e.). Rather the record contains evidence of defendant's negligence, such as accelerating his vehicle when pedestrians were in its path and failing to give any warning. *See Querner v. De Spain*, 339 S.W.2d 723 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.).

### 2. SUDDEN EMERGENCY

■ Defendant also requested an instruction on sudden emergency:

> When a person is confronted by an emergency arising suddenly and unexpectedly, not proximately caused by any negligence on his part, and which to a reasonable person requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or a failure to use ordinary care, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

Sudden emergency is a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the person in question and which calls for immediate action on his part and without time for deliberation. A sudden emergency would relieve a party from the consequences of his conduct, which would otherwise be negligent. *Higgenbotham v. Ritchie*, 367 S.W.2d 210, 211 (Tex. Civ.App.—Fort Worth 1963, no writ).

■ Illey argues that the third party's placing his hands behind his back gave rise to his right to react to a sudden emergency and exonerated him of responsibility for accelerating the car without first checking for persons in its path. We find no other testimony concerning the acts of the third party. Also it is clear that following the altercations on Loop 410, it was the Illey's decision to locate the others and to drive into the vacant gas station.

### 3. PROVOCATION

■ Defendant also asserts the trial court should have given an instruction on provocation.

> You are instructed that in determining the amount of damages to be awarded the Plaintiff, you may take into consideration the manner and conduct of the Plaintiff toward the Defendants at the time of the altercation, and if the manner and conduct of the Plaintiff were such as, in your opinion, amounted to a provocation on his part in bringing about the difficulty, then his damages should be reduced to such sum as in your opinion might seem proper.

Just before the occurrence made the basis of this suit Hatley and Garza were walking toward Guido and McFadden with their backs to the Cordoba. The record indicated no provocative acts on the part of Hatley elsewhere that night. Moreover, we can find no Texas case permitting provocation as a defense to negligence or in mitigation of damages in a negligence action. *See, e.g., Mohler v. Owens*, 352 S.W.2d 855, 859 (Tex.Civ.App.—Houston 1962, no writ); *Richards v. Westmoreland*, 63 S.W.2d 715, 716 (Tex.Civ.App.—Amarillo 1933, no writ); *Haverbekken v. Johnson*, 228 S.W. 256, 258 (Tex.Civ.App.—Austin 1921, no writ) (provocation may be considered in mitigation of damages in an action based on assault).

We find that the required evidence to support the requested jury instructions on sole proximate cause, sudden emergency and provocation has not been shown. Therefore those instructions were neither necessary nor proper to enable the jury to render a verdict. The trial court did not abuse its discretion in so denying these instructions. *Charter Oaks Fire Insurance Co., supra* at 229; TEX.R.CIV.P. 277.

### FUTURE MEDICAL EXPENSES

In points of error seven through ten, defendant challenges the jury finding and judgment of $1,000,000.00 for future medical expenses because there are no pleadings alleging this amount and the evidence is legally and factually insufficient to support that amount.

■ We agree with Illey that the Hatley's recovery should be limited by the amount shown by the pleadings. *Rhodes v.*

*City of Austin*, 584 S.W.2d 917, 925 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.). However, the pleadings clearly state that "... [P]laintiff will in reasonable probability be required to incur medical and doctor expenses and nursing care in the future in the amount of *at least* $250,000.00, all of which will be reasonable and necessary." [Emphasis ours]. We find the wording of plaintiff's petition to be sufficient to support a jury award of $1,000,000.00 *provided* it is supported by sufficient evidence. Point of error seven is overruled.

To determine whether a jury verdict is excessive, an appellate court must first calculate, after reviewing the evidence, what sum would be held to be reasonable if awarded by the jury. *Atchison, Topeka & Santa Fe Railway Co. v. Ham*, 454 S.W.2d 451, 460 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.). The court reviews only the evidence in the light most favorable to the verdict. *Green v. Rudsenske*, 320 S.W.2d 228, 235 (Tex.Civ.App.—San Antonio 1959, no writ).

Dr. Richard H. Kokemoor, a third year resident in neurosurgery, testified that there was a reasonable medical probability that Hatley would develop contractures (a shortening of muscles and tendons and the freezing of joints such that the normal range of motion could no longer be achieved), and treatment for such a condition could involve a two week hospital stay with costs amounting to about $5,000.00.

Dr. David Kissel, a second year resident in physical medicine and rehabilitation testified that Hatley should receive physical exercise on a daily basis for one hour a day for the rest of his life. It was shown he had a normal life expectancy of 45.6 years. The cost of the exercise was established at $169,000.00 for future medical expenses ($10/day × 365 days × 45.6 years = $169,000.00). There was no other evidence in the record as to a sum for future medical expenses.

We find that the sum of $5,000.00 for surgery for contractures and the sum of $169,000.00 was established for future medical expenses. Based on the evidence,

the jury thus could have awarded Hatley $174,000.00 for future medical expenses. Beyond this sum, we consider the award to be excessive and unsupported by the evidence. We therefore suggest a remittitur of $826,000.00. *Atchison, Topeka & Santa Fe, supra* at 463; *Moore v. Ellis*, 408 S.W.2d 724, 727 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.); TEX.R.CIV.P. 440.

## CROSSPOINTS

In crosspoint one, Hatley contends that Merrick should also have been found liable. In crosspoints two through four, Hatley argues that the trial court should have disregarded the jury answer to Special Issue 4, the finding that Illey was not engaged in the service of and in furtherance of the business of Slush Puppie because the evidence was legally and factually insufficient. In a reply brief, Illey argues this court is without jurisdiction to consider the crosspoints because no appeal has been perfected against David Merrick and Slush Puppie-Alamo City, Inc. We will address that reply argument.

At the conclusion of the evidence, the trial court granted an instructed verdict in favor of Merrick. The jury failed to find that Illey was in the service of Slush Puppie-Alamo City, Inc. and in furtherance of its business. In the judgment the trial court denied Hatley's motion for judgment against Merrick and Slush Puppie-Alamo City, Inc. The judgment effectively severed defendant Illey from defendants Slush Puppie and Merrick.

Crosspoints may not raise issues about a judgment from which appellee did not object and except and concerning a part from which appellant did not appeal. *Stendebach v. Campbell*, 665 S.W.2d 557, 560 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). Although Hatley did file a motion to enter judgment against Merrick and Slush Puppie prior to the judgment, the record does not reflect that he objected to the judgment, which was then entered in his favor. Hatley did not file an appeal bond to perfect an independent appeal

against Merrick and Slush Puppie. We conclude this court has no jurisdiction to consider the issues addressed in the cross-points. *Id.* The judgment is therefore affirmed, on condition that Hatley file a remittitur in the amount of $826,000.00.

## ON MOTION FOR REHEARING

Our judgment of affirmance was conditioned upon appellee's remittance of a portion of the damages awarded for future medical expenses, specifically future nursing care. Appellee declines to remit any sum and presents further argument on his motion for rehearing.

Hatley complains of the requirement of remittitur of $826,000 (future medical expenses). Although Hatley agrees there is no evidence as to the hourly rate of nursing services, he says the jury could infer the cost of future nursing services, perhaps by family members, by applying the minimum wage rate.

■■■ We first note that there were no special issues submitted which addressed future nursing care and expenses. *Compare Texas Employers Insurance Association v. Choate,* 644 S.W.2d 112, 115 (Tex. App.—Amarillo 1982, no writ) (jury issue on nursing services). Even assuming that future nursing services may be subsumed under future medical care, which was generally pled and on which a special issue was submitted, the record is devoid of evidence showing the need for custodial nursing care or the reasonable cost of such nursing care. To the contrary, both Dr. Kissell and Dr. Kokemoor testified that Hatley could perform the normal functions of daily living himself (eating, dressing, personal hygiene). *Compare Transport Insurance Co. v. Polk,* 400 S.W.2d 881 (Tex.1966) (testimony as to necessity for nursing care and reasonable cost of such care). "The rule of requisite certainty in proof consistent with practicality of its production" is not satisfied in our case. *Texas Steel v. Recer,* 508 S.W.2d 889, 900 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). Simply stated, there is no evidence of the necessity for, or expense of, future nursing services.

Appellee next challenges the decision of this court that it has no jurisdiction to consider appellee's cross-points.

■■■ While the general rule is that the appellee need not file a cost bond to perfect his appeal, TEX.R.CIV.P. 353, where the appellant does not appeal from an entire judgment, the appellee is obligated to perfect an independent appeal from that portion of the judgment which is adverse to him. *See Security Lumber Co. v. Weighard Construction Co.,* 413 S.W.2d 745 (Tex.Civ.App.—Texarkana 1967), *aff'd on other grounds sub nom., University Savings & Loan Association v. Security Lumber Co.,* 423 S.W.2d 287 (Tex.1968). Hatley, by cross-points, seeks relief from a part of the judgment not brought up for appellate review. His right to urge cross-points without prosecuting an independent appeal is subject to the limitation that the cross-points must affect the appellant's interest or bear on matters presented on appeal. *See Connell Construction Co. v. Phil Dor Plaza Corp.,* 158 Tex. 262, 310 S.W.2d 311, 314 (1958); *compare Dallas Electric Supply Co. v. Branum Co.,* 143 Tex. 366, 185 S.W.2d 427, 430 (1945); *Traveler's Indemnity Co. v. Pollard Friendly Ford Co.,* 512 S.W.2d 375 (Tex.Civ.App.—Amarillo 1974, no writ); *Scull v. Davis,* 434 S.W.2d 391 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.).

Appellant properly predicated and raised his appellate "no evidence" point in his motion for new trial. *Rosas v. Shafer,* 415 S.W.2d 889 (Tex.1967). We hold there is no evidence to support the jury finding of future medical expenses in the sum of $1,000,000.00. However, we hold there is evidence to support the award of damages for future medical expenses in the sum of $174,000.00. Accordingly, we reverse and render that portion of the judgment over and above $174,000.00, that is, the award of damages for future nursing care. *See Butler v. Hanson,* 455 S.W.2d 942, 944 (Tex.1970) as to no evidence standard of review. We modify and reform the judgment as to future medical expenses, the

judgment to conform to the sum proved by the evidence: $174,000.00. The points presented by appellee in his motion for rehearing are overruled.

As reformed, the judgment is affirmed.