**RIMCO ENTERPRISES, INC., Appellant,**

v.

**TEXAS ELECTRIC SERVICE COMPANY, Appellee.**

No. 18264.

Court of Civil Appeals of Texas, Fort Worth.

May 8, 1980.

Rehearing Denied June 5, 1980.

Brown, Herman, Scott, Dean & Miles and R. David Broiles, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, and Mark C. Hill, Forth Worth, for appellee.

OPINION

MASSEY, Chief Justice.

This is a suit for collection of a debt Rimco Enterprises, Inc., allegedly owes Texas Electric Service Company (TESCO). In the trial court RIMCO denied receipt of service and raised usury as an affirmative defense by way of counterclaim, seeking to recover all penalties of usury, including cancellation of principal, double the amount of interest, and reasonable attorney's fees. TESCO prevailed in a trial to the court, where RIMCO's usury counterclaim was also found to be without merit and denied.

RIMCO has appealed on two points of error. The first states that there was insufficient evidence to support the finding that RIMCO received the electricity for which it was billed. The second complains of the denial of the usury counterclaim. On appeal, TESCO has moved to dismiss the appeal and has attacked, for the first time, RIMCO's capacity to sue or defend in the courts of this state.

TESCO's motion to dismiss is denied, and the judgment of the trial court is affirmed.

ON MOTION TO DISMISS APPEAL

It appears from the record that RIMCO forfeited its corporate charter on or about 21 March 1977 due to nonpayment of its franchise tax, pursuant to V.A.T.S. Title 122A, "Taxation-General", Art. 12.14(2), "Failure to Pay Tax and File Reports" (Supp.1980). Such article provides in part, as follows:

"Any corporation whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this State, except in a suit to forfeit the charter or certificate of authority of such corporation. In any suit against such corporation on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation unless its right to do business in this State shall be revived as provided in this Chapter."

Two issues are raised by TESCO's motion to dismiss. The first deals with RIMCO's

right of access to the courts of this state, and specifically whether RIMCO has the right to prosecute any part of this appeal. The second issue deals with the timing of this motion and whether TESCO can raise this defect at this time or whether it waived RIMCO's disability to sue or defend by failure to timely assert such an objection at the outset of trial.

■ Corporations are creatures of statute. The privilege of suing or defending in Texas courts is conferred upon a corporation by its charter and state statute. The state may also abolish a corporate charter at any time, subject to constitutional guarantees of due process and the like. Such an act would logically result in the complete destruction of the right of the corporation, as a legal entity, to sue or defend in state court. It follows that if the state, by abolishing a corporate charter, may destroy the right of a corporation as an entity to prosecute or defend an action in the courts, the state possesses the lesser power of restricting a corporation's right to the use of our courts only so long as it discharges its obligation to the state by the payment of the required franchise taxes. *Federal Crude Oil Co. v. Yount-Lee Oil Co.*, 122 Tex. 21, 52 S.W.2d 56 (1932).

Because RIMCO failed to pay its franchise tax, its right to do business under its corporate charter was forfeited and, under our statutes RIMCO's right of access to the courts of Texas, to an extent, was barred. (V.A.T.S. Title 122A, "Taxation-General", Ch. 12, "Franchise Tax", Art. 12.14, "Failure to Pay Tax and File Reports" (Supp. 1980)).

Two points of error have been raised and in each RIMCO seeks varying degrees of access to state courts.

In the first, RIMCO contests all liability by the suit of TESCO. In the second, RIMCO seeks affirmative relief in the prosecution of its usury counterclaim. Are both barred by RIMCO's failure to pay its franchise tax?

■ A corporation that has failed to pay its franchise tax does not thereby find itself unable to raise a defense to any suit that may arise. In *Bryan v. Cleveland Sand & Gravel Co.*, 139 S.W.2d 612 (Tex.Civ.App.— Beaumont 1940, writ ref'd), the court said of a predecessor statute, adopted into the present Taxation-General statute at Art. 12.14 without material change (at page 613):

"[A]rt. 7091 denies to a corporation, whose right to do business has been forfeited . . . for failure to pay franchise tax, the right to any *affirmative relief* in the courts of Texas, . . . . We do not understand our courts to hold that such a corporation cannot interpose a defense *purely negative* in character against a suit brought against it, . . . [T]he plaintiff . . . is still under the duty of establishing his cause of action, and the corporate defendant may, . . . offer proof which negatives the plaintiff's case." (Emphasis supplied.)

TESCO asserted that RIMCO received service. RIMCO denied and lost at the trial court level. Insofar as TESCO was granted relief in the lower court on this issue, this court is bound to review that decision for any impropriety.

The counterclaim of usury stands on different footing. RIMCO is not "interposing a defense purely negative in character" but is in fact a defendant corporation seeking affirmative relief, in direct contradiction to the statute, by way of its counterclaim. Where a corporation is sued and desires to obtain affirmative relief, it must do so by means of a cross-action in which it is necessarily the plaintiff, and the plaintiff bringing the original suit occupies the position of a defendant. The legislature could have had but one purpose in putting such a provision in this act; to prevent the corporation from thwarting the purpose of the legislature by getting relief through means of a cross-action which it was prohibited from obtaining in an independent suit in which it was plaintiff. *Federal Crude Oil Co., supra*, (52 S.W.2d at p. 60).

Therefore, RIMCO's counterclaim for usury would be barred by its failure to have made franchise tax payments as required

under V.A.T.S. Taxation-General, Art. 12.-17, "Forfeiture of Charter and Bill of Review" (1969), unless such disability was waived by TESCO's failure to timely object on the ground of forfeiture of the RIMCO right to do business in this state. Nowhere in its motion to dismiss does TESCO discuss the issue of waiver. RIMCO, on the other hand, asserts that the failure by TESCO to have attacked RIMCO's capacity to sue by a timely and proper plea in abatement waived its right to later complain.

 It is the general rule that in order to contest a party's capacity to sue an objection must be made by a plea in abatement in the trial court and the issue cannot be urged for the first time on appeal. *Allen v. Wilkerson*, 396 S.W.2d 493 (Tex.Civ. App.—Austin 1965, writ ref'd n. r. e.). More specifically, in *Frazier v. Waco Bldg. Ass'n.*, 25 Tex.Civ.App. 476, 61 S.W. 132, 134 (Waco 1901, writ ref'd), the court stated the requirement to raise failure to pay a franchise tax by a timely plea in abatement, in these words: "The right of the appellee to bring and maintain the suit because it had not paid its franchise tax should have been raised before judgment, and came too late when first presented by the motion for a new trial." See also *H. O. Wooten Grocer Co. v. Smith*, 161 S.W. 945 (Tex.Civ.App.—Fort Worth 1913, no writ).

TESCO's motion to dismiss is denied.

### ON THE MERITS

We affirm the judgment.

The TESCO suit was brought under T.R. C.P. 185, "Suit on Sworn Account" and was for material or services supplied in the form of electric current. A systematic record of charges, compiled and kept by TESCO, was incorporated into the petition, supported by affidavit. TESCO's petition complied completely with the provisions of the Rule. In response, however, RIMCO filed only a general denial. As a "special defense" it pled in addition to the denial, as follows:

"Defendant would show that Texas Electric Service Company has made unilateral charges which are characterized as "late charges," which are in excess of the max-

imum lawful rate to be charged a corporation, being 1.5% per month. Thus, said charges are in violation of Article 5069–1.06, *Texas Revised Civil Statutes.* Defendant seeks to recover all penalties of usury, cancellation of the principal of the obligation, double the amount of interest, and a reasonable attorney's fee."

After TESCO closed its opening testimony with proof of its reasonable attorney's fees, RIMCO proceeded with its evidence. During the course thereof it was discovered that RIMCO had not complied with Rule 185 by denying the account under oath. The court permitted RIMCO to add to its previously filed answer the following sworn allegations:

### "SPECIFIC DENIAL

"Defendant would show that the account sworn to in the plaintiff's petition is not just, due or owing, specifically:

"A. Defendant did not occupy the premises at all times, and was not the owner or tenant thereof, and the electrical services were not provided to this defendant.

"B. Defendant did not agree to pay the charges on Exhibit A.

"C. The late charges are illegal and not due."

 By reference to Rule 185 it is obvious that even with this additional matter added to the RIMCO pleadings they were insufficient allegations to entitle it to deny the TESCO account. By the authorities such failure of compliance amounts to an admission that the account on which TESCO had declared was correct. *Airborne Freight Corp. v. CRB Marketing, Inc.*, 566 S.W.2d 573 (Tex.1978). Therefore, no issue of fact as to the validity of the claim is presented. *Brown v. Clark*, 557 S.W.2d 558, 559–60 (Tex.Civ.App.—Texarkana 1977, no writ). The sworn account itself was prima facie evidence that the debt was true and there was not the necessity that it be formally admitted into evidence for TESCO's entitlement to have it so treated. *Airborne Freight Corp., supra,* (at p. 575).

Considering the law, we find that there was evidence in support of the demand by the suit on the sworn account. It was not only sufficient but is to be deemed uncontested. RIMCO's first point of error, contending that there was no evidence, or insufficient evidence to support the judgment, is therefore overruled.

RIMCO's second point of error asserts error in the denial of its counterclaim for usury in that there was a charge of interest in excess of the lawful rate, thus entitling it to the penalties under V.A.T.S. Title 79, "Interest", Art. 5069–1.06, "Penalties". RIMCO refers to a $17.30 "late charge" for nonpayment of $576.67 for electricity furnished from 3–28–76 to 4–28–76 and another "late charge" of $11.76 for nonpayment of $392.00 for electricity furnished from 4–28–76 to 6–15–76 (reflected by the account of TESCO in Exhibit A to its petition in sworn account).

■ In 64 Tex.Jur.2d, "Words & Phrases" (1965), we notice that interest is the compensation allowed by law fixed by the parties to a contract for the use, forbearance, or detention of money and that usury is defined as interest in excess of the amount allowed by law. There must be "interest" or there can be no usurious interest. We think it obvious that the "late charges" do not arise from the use, forbearance, or detention of money. It follows that there could be no usury in the demand of TESCO. The point is overruled.

From the foregoing it is obvious that TESCO was entitled to collect that upon which it declared by its sworn account. TESCO was not awarded this by the trial court. What it got was a lesser sum, for the trial court, acting as the finder of fact, did not see fit to grant the whole of the demand. The relief granted by its judgment was for approximately three-fourths (¾ths) of the account total, plus pre-judgment interest, and plus $300.00 in attorney's fees. TESCO was not satisfied with the judgment, but did not take any action to appeal therefrom. It did not file an appeal bond.

RIMCO did appeal, whereupon TESCO concluded that it would be justified in attempting to get a judgment in the appellate court for the total of its entitlement. This it sought to obtain by a cross-point on appeal. Were we free to act, as was the trial court, our judgment would be one of reformation, by which TESCO's judgment would be increased.

■ However, we have concluded that even though a proper judgment would have been that represented by TESCO it is without the power of this court to grant more than was awarded by the trial court because of TESCO's failure to perfect a cross-appeal.

A somewhat similar case was *Benton v. Taylor*, 208 S.W. 704 (Tex.Civ.App.—El Paso 1919, writ ref'd). There Taylor had sued Benton, and Benton had filed cross-action in suit against Taylor. Trial was to a jury, following which a judgment was rendered that neither party recover anything from the other. From the denial defendant Benton perfected an appeal. Plaintiff Taylor did not perfect an appeal (bond held to have been filed to late). Nevertheless Taylor sought to present his cross-appeal, and Benton moved to dismiss the same. The court ordered the Taylor cross-appeal dismissed.

In *Shirey v. Harris*, 288 S.W.2d 315 (Tex. Civ.App.—Fort Worth 1956, no writ), this court held that an appellee, who by crosspoint on the appeal of another sought in addition to that received by the decision of the trial court an increase or additional amount of $500.00, could not be heard on that request. The reason stated by the appellate court was because the appellees had not executed the bond required by T.R. C.P. 324, "Prerequisites of Appeal". To similar effect was the decision on *Schell v. Texas Bank & Trust Co.*, 439 S.W.2d 473 (Tex.Civ.App.—Texarkana 1969, writ ref'd n. r. e.), though in that case there had also been failure of the appeal of the plaintiff/appellant to perfect an appeal because of failure to timely file his appeal bond.

■ Where an appellee wants greater relief on appeal than received by the judg-

ment from which his adversary has appealed and become appellant, the appellate court is without jurisdiction to make the grant unless the appellee has perfected his own cross-appeal. In other words the relief desired may not be obtained by mere cross-point on the appeal. Cases bearing thereupon are annotated at 3 Tex. Digest, "Appeal and Error", ⟜395, "Effect of failure to give or defects in security" (1953).

In *Scull v. Davis*, 434 S.W.2d 391, 394 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.), Judge Preslar considers the authorities, including *Jackson v. Ewton*, 411 S.W.2d 715 (Tex.1967), on "points" and "cross points", and their definition and function. His conclusion was that of the cross points in the case some probably qualified to be considered by rules of law and procedure and some did not. However, the court considered all in an abundance of precaution. It overruled them all.

In *Travelers Indemnity Co. v. Pollard Friendly Ford Co.*, 512 S.W.2d 375, 381 (Tex.Civ.App.—Amarillo 1974, no writ), where the trial had been to the court without a jury, the appellee sought by cross-points of error to obtain on appeal more than the amount the trial court had awarded. Though there had been no cross-appeal the Amarillo court held existent the right to have the claim considered because of the cross-points. However, the court ultimately held appellee's claim to be without merit. (In the case before us, had we followed the Amarillo court we would have held that our jurisdiction of TESCO's cross-points obtained, and on the appeal would have awarded more to TESCO than was granted by the trial court.)

In our opinion our holding is in conflict with that of the Amarillo court in *Travelers Indemnity*. By our construction of the applicable law and Rules of Civil Procedure a cross-point of an appellee, where there is no cross-appeal, does not support and provide the ability of an appellee to seek in the appellate court different and/or greater relief than that granted to it by the trial court.

The judgment of the trial court is affirmed.