Thomas A. RIVERA, Sonia de la Rosa, Robert P. McGuill, Ismael Espinosa, Maricela Garza, and Stephen Perez, for themselves and on behalf of all others similarly situated, Plaintiffs,

v.

AT & T CORPORATION, Time Warner, Inc., Tele–Communications, Inc., TCI Cablevision of Texas, Inc., Texas Cable Partners, LP, KBL Cablesystems of the Southwest, Inc., TCI Central, Inc., Time Warner Entertainment Company, LP, and TWI Cable, Inc., for themselves and as representatives of all others similarly situated, Defendants.

Civ.A. No. V–00–93.

United States District Court,
S.D. Texas,
Laredo Division.

April 17, 2001.

Bryan Powers, Attorney at Law, Robstown, TX, for Thomas A. Rivera, Sonia de la Rosa, Robert P. McGuill, Ismael Espinosa, Marcela Garza and Stephen Perez.

Bryan Powers, Attorney at Law, Robstown, TX, Harlin C. Womble, Jr., Attorney at Law, Corpus Christi, TX, for Antonio Martinez and John Braun.

Gregg Charles Laswell, Suzanne R. Chauvin, Akin Gump Hauer & Feld, Houston, TX, Richard Milvenan, Austin, TX, for defendants.

### ORDER OF DISMISSAL

ELLISON, District Judge.

Before the Court are Defendants' Motions to Dismiss Plaintiffs' lawsuit under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's Motions are hereby GRANTED and the lawsuit is DISMISSED with prejudice. All other motions pending before the Court in this lawsuit are hereby DENIED as moot.

#### I. Background

Plaintiffs Thomas A. Rivera, Sonia de la Rosa, Robert P. McGuill, Ismael Espinosa, Maricela Garza, and Stephen Perez have filed this lawsuit on behalf of a class of cable subscribers against a class of Defen-

dants pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). Title 18 U.S.C. §§ 1962(a), (c), and (d). The named Defendants are AT & T Corporation, Time Warner Incorporated, Tele–Communications Incorporated, TCI Cablevision of Texas Incorporated, Texas Cable Partners LP, KBL Cablesystems of the Southwest Incorporated, TCI Central Incorporated, TWI Cable Incorporated, and Time Warner Entertainment Company LP. All are cable systems operators who provide cable services to their subscribing customers in the Southern District of Texas and elsewhere.

Plaintiffs have defined the class of Defendants to include "all persons who charged a late fee to a cable service subscriber and who directly or through one or more subsidiar[ies] or affiliate[s] own a significant interest in a cable system," or who otherwise control or are responsible for a cable system identified by one of the Federal Communications Commission Community Unit Identification Numbers listed in Plaintiffs' complaint, or a cable system operated by a division of Time Warner Cable in one of the cities listed in the complaint.[1]

These Defendants provide cable services to their customers pursuant to an agreement in which the subscribers agree to pay a monthly fee for the use of the cable equipment and the cable programming provided through that equipment. The agreement further provides that subscribers be charged a $3.00 or $5.00 "administrative fee" if their monthly payments are not received by the designated due date. The monthly payments owed by the named Plaintiffs ranged from $16.79 to $141.90 and, thus, the additional "administrative fees" constituted up to 30% of the original amount due.[2] Plaintiffs allege that these fees are usurious under Texas law and that, by collecting these fees, Defendants have violated the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). Title 18 U.S.C. §§ 1962(a), (c), (d). Plaintiffs claim they are entitled to recover damages, litigation costs, and reasonable attorney's fees pursuant to Title 18 United States Code, section 1964(c) (providing a private cause of action to individuals injured by RICO violations).

## II. Discussion

Defendants Time Warner, Inc., Texas Cable Partners, L.P., KBL Cablesystems

1. Plaintiffs list the following cities: Austin, Texas; Orlando, Florida; Bakersfield, California; Green Bay, Wisconsin; Raleigh/Durham, North Carolina; Birmingham, Alabama; Greensboro, North Carolina; Reading, Pennsylvania; Boston, Massachusetts; Honolulu, Hawaii; Rochester, New York; Charlotte, North Carolina; Memphis, Tennessee; San Diego, California; Cincinnati, Ohio; New York City, New York; Shreveport, Louisiana; San Antonio, Texas; Houston, Texas; Indianapolis, Indiana; Kansas City, Missouri; Minneapolis, Minnesota; Milwaukee, Wisconsin; Portland, Oregon; Los Angeles, California; Tampa, Florida; Syracuse, New York; Albany, New York; and Portland, Maine.

2. Plaintiffs Thomas Rivera and Sonia de la Rosa allege that Texas Cable Partners LP, doing business as Time Warner Communica-

tions, charged them a $5.00 late fee for failing to pay their bill of $141.90 until 51 days after it was due. Robert McGuill alleges that TCI Cablevision of Texas, Inc. charged him a $3.00 late fee for failing to pay his bill of $60.38 until 48 days after it was due. Ismael Espinosa alleges that TCI Cablevision of Texas, Inc. charged him a $3.00 late fee for failing to pay his bill of $32.66 until 33 days after it was due. Maricela Garza alleges that Texas Cable Partners LP, doing business as Time Warner Communications, charged her a $5.00 late fee for failing to pay her bill of $16.79 until 22 days after it was due. Stephen Perez alleges that KBL Cablesystems of the Southwest, doing business as Paragon Cable, charged him a $5.00 late fee for failing to pay his $59.84 bill until 34 days after it was due.

of the Southwest, Inc., Time Warner Entertainment Company, L.P., TWI Cable, Inc., AT & T Corporation, Tele–Communications, Inc., TCI Cablevision of Texas, Inc., and TCI Central, Inc. have moved to dismiss Plaintiffs' lawsuit for failure to state claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). In their Motions, Defendants "admit[ ] the facts alleged in the complaint, but challeng[e] plaintiff[s'] right to relief based upon those facts." *Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir.1966). Thus, the Court cannot grant Defendants' Motions to Dismiss unless Plaintiffs would not be entitled to recover under any set of facts that could be proven consistent with the allegations in the complaint. *See Bonner v. Henderson,* 147 F.3d 457, 459 (5th Cir.1998).[3]

■ Congress enacted RICO as part of an effort to "reduc[e] the insidious capabilities of persons in organized crime to infiltrate the American economy." *United*

States v. Frumento,* 563 F.2d 1083, 1090 (3rd Cir.1977). In order for Plaintiffs to recover damages for violations of Title 18 U.S.C. § 1962(a), (c), or (d), they must show that Defendants are 1) persons who have engaged in, 2) the collection of an unlawful debt, 3) in connection with the acquisition, establishment, conduct, or control of an enterprise. *See Delta Truck & Tractor, Inc., v. J.I. Case Company,* 855 F.2d 241, 242 (5th Cir.1988). Because Plaintiffs have failed to offer any allegations supporting either the notion that Defendants collected an unlawful debt or that an enterprise existed, Plaintiffs cannot recover any RICO damages.

### A. Defendants have not collected an unlawful debt

■ A RICO person "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). While Plaintiffs assert

3. Defendants additionally claim that this suit should be dismissed pursuant to a settlement agreement entered into by all of the named Plaintiffs in this case as well as Defendants. The parties disagree, however, as to the effective date of the agreement. *See Owens et. al. v. TCI Cablevision of Dallas, Inc., et al.,* No. E–157–770 (172nd D.Texas Oct. 5, 2000). Defendants claim that the effective date of the settlement agreement has been set at February 16, 2001 while Plaintiffs assert the settlement's effective date is contingent on the terms set out in the agreement. Because of the disagreement, the Court does not choose to dismiss the lawsuit on this ground. We would, however, like to note our concern with the manner in which Plaintiffs' counsel appears to have handled the execution of the agreement.

As this Court reads the settlement terms, the agreement was to be effective when, by joint motion of the parties involved, all lawsuits subject to the agreement, including three of the lawsuits brought by Plaintiffs' counsel, were dismissed *with prejudice* in their respective courts. When Defense counsel moved this Court to dismiss Plaintiff's case on the

grounds of res judicata, this Court discovered that these terms had not been met. We received a letter from Plaintiffs' counsel in which he admits that he moved two courts to dismiss *without prejudice* his other two pending lawsuits against Defendants. Plaintiffs' counsel argued that, because the requirements for the effective date had not been and would not ever be met, the settlement agreement could not act as res judicata against the present lawsuit. On this ground, Plaintiffs' counsel urged the Court to deny Defendants' Motions to Dismiss. While the Court recognizes that Plaintiffs' counsel did not represent the plaintiff class in that settlement, the agreement was made with the expectation that the parties to that settlement, including some of the named Plaintiffs in this case, would make a good faith effort to comply with those terms. *Cf. Herbage v. Snoddy,* 864 S.W.2d 695, 699 (Tex.App.—Houston 1993) (noting that a buyer does not breach a contract for sale if he "make[s] good faith efforts to obtain the loan under the contract conditions, but [is] unable to do so"). The Court finds troubling the apparent attempts by Plaintiffs' counsel to evade his clients' obligations in this manner.

their claim against an entire class of defendants, each member of the class is defined as a legal entity meeting the qualifications of a RICO person. Thus, this Court finds that Plaintiffs have adequately pled the "person" element of their RICO claim.

Plaintiffs, however, have failed adequately to plead that Defendants have engaged in the "collection of an unlawful debt." Title 18 United States Code, section 1961(6) defines an "unlawful debt" as one:

> (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, *or which is unenforceable under State of Federal law in whole or in part as to principle or interest because of the laws relating to usury,* and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, *or the business of lending money or thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.* (emphasis added)

Because Plaintiffs allege no gambling activity by Defendants, they must allege facts to show that Defendants have a) collected a debt unenforceable under state or federal law, and b) which was incurred in connection with the business of lending where the usurious rate was twice that which would have been enforceable.

Plaintiffs claim they have alleged facts to meet both of these requirements. Plaintiffs assert that the $3.00 and $5.00 "administrative fees" Defendants charge customers for the late payment of their monthly bills are unenforceable under Texas usury law. Because Texas usury law forbids interest charges in excess of 10% of the principal due each year, Plaintiffs argue that the "administrative fees" consti-

tuting up to 30% of the principal due are more than twice the usurious rate. The facts alleged by Plaintiffs, however, fail to show that Defendants have collected an unlawful debt because Plaintiffs have failed to plead usury under Texas law.

Texas usury law prohibits the charging of "interest" in excess of 10% per year. *See* Tex.Fin.Code § 302.001; *Rimco Enterprises, Inc. v. Texas Electric Service Company,* 599 S.W.2d 362, 366 (Tex.Civ. App.—Fort Worth 1980) (asserting that "there must be 'interest' or there can be no usurious interest"). "Interest" is defined under the Texas Finance Code as "compensation for the use, forbearance, or detention of money." *See* Tex.Fin.Code § 301.002(4); *Crow v. Home Savings Association of Dallas County,* 522 S.W.2d 457, 459 (Tex.1975) (asserting that "[i]t is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money; if neither of these elements exist, there can be no usury"). Plaintiffs have not alleged that Defendants charged any "interest" because they have not alleged that Defendants received any compensation for the use, forbearance, or detention of money.

Plaintiffs have attempted to show a "lending relationship" between the cable providers and their subscribers by arguing that Defendants are in the business of lending cable equipment to their customers. They claim that the "administrative fees" Defendants charged for late payments, therefore, constitute usurious interest. The Court disagrees with this characterization and finds that Defendants are more accurately described as cable service providers and, as service providers, Defendants' late fees cannot be usurious. *See Rimco Enterprises, Inc. v. Texas Electric Service Company,* 599 S.W.2d 362, 366 (Tex.Civ.App.—Fort Worth 1980) (dismissing a defendant's counterclaim against

electricity provider that its charge for late payment of electric bills was usurious because "interest is the compensation allowed by law fixed by the parties to a contract for the use, forbearance, or detention of money").

 Even assuming, however, that Defendants' business could be accurately characterized as cable equipment lending, Plaintiffs have failed to plead any usury. A contract between parties to "lend" property is a rental agreement and the late fees charged are not construed as "interest" under Texas usury law. *See Apparel Manufacturing Company, Inc. v. Vantage Properties, Inc.*, 597 S.W.2d 447, 449 (Tex. Civ.App.—Dallas 1980) (holding that "a rental contract is not a 'lending transaction' and that the usury statutes cannot be applied to the 'late charge' contracted for by the parties"); *Potomac Leasing Company v. Housing Authority of the City of El Paso*, 743 S.W.2d 712, 713 (Tex.App.—El Paso 1987) (asserting that "to establish usury [in lease transactions], it was necessary to first establish that the leases were not mere leases but were, instead, lease-purchase agreements").[4]

Finally, Plaintiffs argue that RICO does not require the pleading of adequate facts to support a Texas usury claim. Instead, they assert that they have referenced Texas usury law for the sole purpose of "defining" the usurious rate. Plaintiffs cite a line of cases which hold that "the conduct on which the federal charge is based [need only be] typical of the serious crime dealt with by the state statute, . . . the particular defendant [need not] be 'chargeable under State law' at the time of the federal indictment." *United States v. Frumento*, 563 F.2d 1083, 1087–88 (3rd Cir.1977). *See also United States v. Forsythe*, 560 F.2d 1127, 1135 (3rd Cir.1977) (asserting that "[t]o interpret state law offenses to have more than a definitional purpose [in RICO] would be contrary to the legislative intent of Congress"); *United States v. Salinas*, 564 F.2d 688, 690–91 (5th Cir.1977) (finding that courts need not look to " 'the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the . . . activity charged' ") (citing *United States v. Nardello*, 393 U.S. 286, 295, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969)).

4. Plaintiffs argue, alternatively, that case law that pre-dates the codification of Texas usury law is irrelevant to the analysis of what constitutes usury under the current statutory scheme. They, therefore, argue that the case law requiring the use, forbearance, or detention of money for usury to exist, is obsolete. This argument fails for two primary reasons. First, every case that has interpreted the Texas usury statute, from its inception, has found that statute to require the use, forbearance, or detention of money for usury to exist. *See e.g., Schepps Grocery Company v. Burroughs Corporation*, 635 S.W.2d 606, 610 (Tex.App.—Houston 1982) (finding that "[i]t is a fundamental principle governing the law of usury that it must be founded on a loan of forbearance of money"); *First Bank v. Tony's Tortilla Factory*, 877 S.W.2d 285, 287 (Tex.1994) (asserting that "[i]nterest is compensation for the use, forbearance, or detention of money . . . . [and i]f there is no interest, there can be

no basis for usury"); *Grotjohn Precise Connexiones International, S.A. v. JEM Financial, Inc.*, 12 S.W.3d 859, 875 (Tex.App.—Texarkana 2000) (finding that essential elements of usury to be "(1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of money by the borrower").

Second, even if this Court accepted Plaintiffs' proposition that each time a statute is amended, all prior case law must be disregarded, the 2001 version of the Texas usury statute explicitly defines the term "interest" as "compensation for the use, forbearance, and detention of money." Tex.Fin.Code § 301.002(4). The Texas statute further defines "usury" as "a greater rate of *interest* than 10 percent a year." Tex.Fin.Code § 302.001(b) (emphasis added).

Those decisions, however, are inapplicable to the present lawsuit because in each case the defendant was actually alleged to have violated state law. Thus, the reference to state law served the purpose of defining the predicate illegal act. *See United States v. Frumento*, 563 F.2d 1083, 1087–88 (3rd Cir.1977) (emphasizing that the purpose of RICO was not to punish the state law violations committed by the defendants, but to "punish[ ] the use of facilities in interstate commerce in furtherance of enterprises violative of state statutes"); *United States v. Forsythe*, 560 F.2d 1127, 1134–35 (3rd Cir.1977) (finding that, even though defendants could not be convicted in state court due to the state statute of limitations, the state law violations could still serve the basis for a federal RICO action because "RICO incorporates the elements of those state offenses for definitional purposes"); *United States v. Salinas*, 564 F.2d 688, 690 (5th Cir.1977) (holding that a federal RICO claim on the basis of the illegal collection of gambling debts is cognizable, in a state that forbids gambling but does not specifically bar "the business of gambling" because "references to state law serve a definitional purpose, to identify generally the kind of activity made illegal by the federal statute").

In the instant case, Plaintiffs do not use Texas law to define the predicate illegal act. Instead, they use Texas's 10% usurious rate to meet RICO's requirement of having "the usurious rate [be] twice the enforceable rate" while rejecting Texas's definition of usury itself. 18 U.S.C. § 1961(1)(B). Because Plaintiffs cannot allege that Defendants' behavior met the "definition" of usury under Texas law, they cannot claim that Defendants have committed a predicate illegal act sufficient to sustain a RICO claim.

Because Defendants' $3.00 and $5.00 "administrative fees" do not violate the Texas usury statute and Plaintiffs have not alleged a violation of any other state or federal law, Plaintiffs have failed to demonstrate those fees to be "unenforceable" under Title 18 United States Code, section 1961(6)(A). Therefore, Plaintiffs cannot allege that Defendants have "collected an unlawful debt" as required to state a claim under Title 18 United States Code, sections 1962(a), (c), and (d).

*B. Defendants are not engaged in an "enterprise"*

■ Even if Plaintiffs could prove Defendants engaged in the collection of an unlawful debt, they have failed to show that Defendants did so in connection with the acquisition, establishment, conduct, or control of an enterprise. Title 18 United States Code, section 1961(4) defines a RICO enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." Here, Plaintiffs have alleged that Tele–Communications, Inc., AT & T Corporation, and Time Warner, Inc. each constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).[5] Plaintiffs' general allegation of an enterprise wholly fails the strict pleading requirements under RICO.[6] *See Elliott v.*

---

**5.** The Court notes that Plaintiffs have not even alleged the participation of any other named Defendants or members of the Defendant class in any of these "enterprises." Accordingly, Plaintiffs' RICO claims against them must fail. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989) (asserting that "[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise").

**6.** All that Plaintiffs have alleged is the following, which appears twice in their complaint:

At all relevant times Tele–Communications, Inc., AT & T Corporation, and Time War-

*Foufas,* 867 F.2d 877, 881 (5th Cir.1989) (asserting that "[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise"). Plaintiffs have alleged absolutely no specific facts to establish the existence of any RICO enterprise and the facts that have been alleged demonstrate that Defendants are not engaged in a RICO enterprise.

■ A RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust, Co.,* 808 F.2d 438, 441 (5th Cir.1987). Plaintiffs have alleged no facts to suggest that Tele–Communications, Inc., AT & T Corporation, or Time Warner, Inc. exist as an entity apart from their business of providing cable services. *See id.* at 441 (dismissing the RICO claim because there was "no evidence that the bank, its holding company, and the three employees were associated in any manner apart from the activities of the bank"). In fact, Plaintiffs' own allegations demonstrate that the allegedly usurious acts were committed as part of each corporation's cable business. *See Old Time Enterprises, Inc. v. International Coffee Corporation,* 862 F.2d 1213, 1217 (5th Cir. 1989) (holding that when the defendant is a legal entity, the plaintiffs must do more than establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business).

■ Construing Plaintiffs' complaint to allege that Tele–Communications, Inc., AT & T Corporation, and Time Warner, Inc., together constitute a RICO enterprise does not redeem the claim. Plaintiffs

would need to demonstrate an "association in fact" which requires "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *Atkinson v. Anadarko Bank & Trust, Co.,* 808 F.2d 438, 440–41 (5th Cir.1987) (quoting *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). Further, Plaintiffs would need to "plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts." *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989). Plaintiffs' allegations establish exactly the opposite: that any association between Tele–Communications, Inc., AT & T Corporation, and Time Warner, Inc. exists merely for the purposes of providing cable services in exchange for a monthly fee.

### C. Plaintiffs have not suffered an injury under § 1962(a)

■ Plaintiffs have failed not only to establish a basic RICO claim, they have not alleged the injury required to sustain a cause of action under 18 U.S.C. § 1962(a). Section 1962(a) states:

It shall be unlawful for any person who has received any income derived, directly or indirectly, ... through the collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

ner, Inc., each constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a). Each enterprise is an ongoing organization. Each enterprise has engaged

in, and its activities have affected interstate and foreign commerce.
Plaintiff's Comp. at 18 and 20.

Courts have interpreted this statute to require that "the compensable injury stem from the violation of the RICO section in question, so any injury under § 1962(a) must flow from the use or investment of racketeering income." *Parker & Parsley Petroleum Company v. Dresser Industries,* 972 F.2d 580, 584 (5th Cir.1992). Plaintiffs in the instant case allege injury from their payment of an unlawful debt, not from Defendants' investment of any unlawful debt income. Plaintiffs have, therefore, plead no claim cognizable under section § 1962(a).

### III. Conclusion

Plaintiffs have completely failed to plead a RICO claim. They have alleged no facts to sustain a claim for civil recovery under RICO and the facts that have been alleged demonstrate conclusively that no such claim could be proven. Therefore, this Court finds that Plaintiffs would not be entitled to recovery under any set of facts that could be proven consistent with the allegations in the complaint. Defendants' Motions to Dismiss Plaintiffs' lawsuit under Federal Rule of Civil Procedure 12(b)(6) are hereby GRANTED and the lawsuit is DISMISSED with prejudice. All other motions pending before the Court in this lawsuit are hereby DENIED as moot.

IT IS SO ORDERED.