Javier GARCIA, Appellant,

v.

TEXAS CABLE PARTNERS, L.P., Time Warner, Inc., and Time Warner Telecom of Texas, L.P., Appellees.

No. 13–01–646–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

April 3, 2003.

Opinion Overruling Rehearing Aug. 29, 2003.

Bryan Powers, Corpus Christi, David A. Furlow, Houston, for Appellant.

Richard D. Milvenan, McGinnis, Lochridge & Kilgore, Austin, for Appellees.

Before Justices HINOJOSA, CASTILLO and DORSEY.[1]

## OPINION

Opinion by Justice DORSEY (Assigned).

Javier Garcia, a cable-television subscriber, sued appellees, alleging their assessment of a five-dollar administrative late fee for delinquent payment of his monthly cable bill constituted usury. Appellees moved for summary judgment, asserting the late fee did not constitute usury as a matter of law. The trial court granted summary judgment. The issue is

---

1. Retired Justice J. Bonner Dorsey assigned to the Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

whether the late fee amounts to usury under the Texas Finance Code. We affirm.

## I. BACKGROUND

Javier Garcia entered into a consumer lease with Time Warner Communications covering cable equipment for the purpose of receiving cable services, which the company provided. Pursuant to the cable service contract, Garcia agreed to pay a monthly fee for cable television services. The monthly billing statement notified the customer that a five-dollar administrative late fee would be charged monthly for payments received ten days after the due date. Garcia alleged that Time Warner Communications charged him, and other similarly situated persons, for late fees when the company billed its customers for cable-television services. He sued Time Warner Communications[2] and Time Warner, Inc., alleging the late fee constituted usury under Texas law. He sought class certification for this lawsuit.

Appellees moved for summary judgment alleging, among other things, that the late fee is not usurious as a matter of law. Garcia specially excepted to the summary-judgment motion, conditionally responded to it, and objected to deficiencies in appellees' summary judgment evidence.

The trial court denied Garcia's special exceptions, overruled his objections to appellees' summary judgment evidence, and granted summary judgment on June 20, 2001. Garcia appeals from that judgment.

## II. STANDARD OF REVIEW

The standards for reviewing a summary judgment motion are well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed material fact issue exists precluding summary judgment, we take as true evidence favorable to the nonmovant; and (3) indulge every reasonable inference in the nonmovant's favor and resolve any doubts in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997), or pleads and conclusively establishes each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

## II. ANALYSIS

■ The issue is whether the late fee constitutes usury under the Texas Finance Code. The essential elements of a usurious transaction are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law for the borrower's use of the money. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex.1994); *Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 491 (Tex.App.-Corpus Christi 1999, no pet.). Usury is defined as "interest that exceeds the applicable maximum amount allowed by law." TEX. FIN.CODE ANN. § 301.001(4) (Vernon 1998). Interest is the "compensation for the use, forbearance, or detention of money." TEX. FIN.

---

**2.** In his fifth-amended petition, Garcia named only Time Warner Communications and Time Warner, Inc., as defendants. He alleged that Time Warner Communications is the registered assumed name in Texas for Time Warner Telecom of Texas, L.P., and for Texas Cable Partners, L.P. He alleged that Time Warner, Inc., is the ultimate owner and manager of Time Warner Communications and that Time Warner, Inc., and AT & T Corporation are the ultimate owners and managers of Texas Cable Partners, L.P.

CODE ANN. § 301.002(a)(4) (Vernon Supp. 2003).

Our usury statutes are derived from the Texas Constitution, which provides the following grant of authority to the legislature: "The legislature shall have authority to classify *loans and lenders,* license and regulate *lenders,* define interest and fix maximum rates of interest." TEX. CONST. art. XVI, § 11 (emphasis added). Pursuant to this grant of authority, the legislature has enacted a statute addressing maximum rates of interest, which includes a definition of "interest." *See* TEX. FIN.CODE ANN. § 301.002(a)(4) (Vernon Supp.2003). Therefore, for the usury laws to apply, there must be an overcharge by a lender for the use, forbearance, or detention of the lender's money. *Stedman v. Georgetown Sav. & Loan Ass'n,* 595 S.W.2d 486, 489 (Tex.1979); *Crow v. Home Sav. Ass'n of Dallas County,* 522 S.W.2d 457, 460 (Tex.1975); *Domizio v. Progressive Cty. Mut. Ins. Co.,* 54 S.W.3d 867, 873 (Tex.App.-Austin 2001, pet. denied). The judicial inquiry is whether this has occurred. *Crow,* 522 S.W.2d at 460. Whether an amount of money is interest does not depend on what the parties call it but on the substance of the transaction. *First USA Mgmt., Inc. v. Esmond,* 960 S.W.2d 625, 627 (Tex.1997). Because usury statutes are penal in nature, we strictly construe them. *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 476 (Tex. 1988).

Courts of appeals have held that, because a rental or lease agreement is not a "lending transaction," the usury statute does not apply to late charges assessed on overdue rental payments. For example, *Maloney v. Andrews,* 483 S.W.2d 703 (Tex. Civ.App.-Eastland 1972, writ ref'd n.r.e.), involved a suit for unpaid rentals under a lease agreement. *Id.* at 703. The defendant counterclaimed that a lease provision for the payment of late charges amounted to usurious interest under former article 5069–1.01 of the Texas Revised Civil Statutes[3] in effect at the time the lease was executed. *Id.* at 704. The court noted that Article XVI, Section 11 of the Texas Constitution authorizing the Legislature to fix maximum interest rates covered only loan transactions and applied to lenders of money. *Id.* at 704–05. Because there was no lending transaction, the court held there was no usury. *Id.* at 705.

In *Tygrett v. Univ. Gardens Homeowners' Ass'n,* 687 S.W.2d 481 (Tex.App.-Dallas 1985, writ ref'd n.r.e.), the court discussed whether a late payment penalty charge resulting from overdue condominium assessments could be usurious. *Id.* at 482–83. The court noted that since usury must be founded on an overcharge by a lender for the use, forbearance, or detention of the lender's money, a lending transaction was necessarily required. *Id.* at 483. The court held that the late charge was not within that category because no funds of the condominium association were transferred or loaned to Tygrett. *Id.* The court concluded that the payment of late charges did not constitute the use, forbearance, or detention of a lender's money within the meaning of the usury statute. *Id.*

In *Rimco Enters., Inc. v. Texas Elec. Serv. Co.,* 599 S.W.2d 362 (Tex.Civ.App.-Fort Worth 1980, writ ref'd n.r.e.), Texas Electric Service Company (TESCO) sued Rimco on a sworn account to recover nonpayment of electricity, plus late charges.

---

**3.** This statute defined "usury" as "interest in excess of the amount allowed by law." *See* Act of May 8, 1967, 60th Leg., R.S., ch. 274, § 2, 1967 Tex. Gen. Laws 608, 609; (since repealed and recodified) (current version at TEX. FIN.CODE ANN. § 301.001(4) (Vernon 1998)).

*Id.* at 365. Rimco counterclaimed for usury, contending that there was a charge of interest in excess of the lawful rate. *Id.* at 365, 366. The trial court entered judgment for TESCO, and denied Rimco's usury counterclaim. *Id.* at 363. In affirming the judgment, the appellate court stated: "We think it obvious that the 'late charges' do not arise from the use, forbearance, or detention of money. It follows that there could be no usury in the demand of TESCO." *Id.* at 366.

A case which does not involve a rental or lease agreement, but which is nevertheless instructive, is *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 285 (Tex. 1994). In that case, First Bank imposed NSF fees of $20 per check against Tony's, totaling $47,600. *Id.* Tony's sued First Bank, alleging that the NSF fees constituted usury. *Id.* The trial court directed a verdict for First Bank on the usury claim. *Id.* The issue before the supreme court was whether First Bank's NSF fee for checks drawn on an account with insufficient funds constituted usury. *Id.* The supreme court stated:

> It is undisputed that each NSF fee was assessed as a processing fee for the additional work required in connection with handling the bad check. . . . There is no dispute that the NSF fee was charged to all customers, in the same amount, regardless of whether First Bank paid or rejected a check. It is undisputed that the amount of the NSF fee had no relationship to the amount of the funds advanced. . . . Thus, the NSF fee was not interest on the amount advanced to cover the bad checks. The NSF fees were charged for the costs of processing a check drawn on an account with insufficient funds. The mere profitability of the NSF fee to First Bank does not make the fee usurious interest.

> Each NSF fee was separate and additional consideration for processing each bad check. Thus, the NSF fee was for consideration other than the lending of money. . . . Based on these undisputed facts, we hold that, as a matter of law, the NSF fees charged in this case were not interest.

*Id.* at 287–88 (citations omitted).

Finally, in *Rivera v. AT&T Corp.*, 141 F.Supp.2d 719, 721 (S.D.Tex.2001), plaintiffs, who were cable-service customers, sued numerous cable-systems operators, alleging the late fees, which the defendants charged for delinquent payment of cable bills, constituted usury. *Id.* at n. 2. The trial court dismissed the suit because the plaintiffs failed to plead usury under Texas law. The court stated:

> Plaintiffs have not alleged that Defendants charged any "interest" because they have not alleged that Defendants received any compensation for the use, forbearance, or detention of money. Plaintiffs have attempted to show a "lending relationship" between the cable providers and their subscribers by arguing that Defendants are in the business of lending cable equipment to their customers. They claim that the "administrative fees" Defendants charged for late payments, therefore, constitute usurious interest. The Court disagrees with this characterization and finds that Defendants are more accurately described as cable service providers and, as service providers, Defendants' late fees cannot be usurious.

> Even assuming, however, that Defendants' business could be accurately characterized as cable equipment lending, Plaintiffs have failed to plead any usury. A contract between parties to "lend" property is a rental agreement and the late fees charged are not construed as "interest" under Texas usury law.

*Id.* at 723–24 (citations and footnote omitted).

■ Here, appellees' summary judgment evidence showed that Javier Garcia was a subscriber of cable-television services from Texas Cable Partners, L.P. ("TCP"). In his affidavit, Juan Herrera, the general manager of the Rio Grande Valley System of the Southwest Division of TCP, stated the company does not lend money to its customers.

In addition, the notice containing subscription rights and billing practices lists a five-dollar "Administrative Fee for Delinquent Payment." This notice further states:

> We do not anticipate that you will pay your bill late and the administrative late fee(s) and other related charges, fees, and assessments related to late payment and nonpayment are set in advance because it would be difficult to know in advance: (a) whether or not you will pay your bill on time, (b) if you do pay late, when you will actually pay your bill, if ever, and (c) what costs we will incur because of your late payment or nonpayment. *We do not extend credit to our customers and the administrative fee(s), related fees, charges and assessments are not interest, a credit service charge or a finance charge. . . .*

(emphasis added). This notice also states: "The administrative fee is intended to be a reasonable advance estimate of our costs which result from customer's late payments and nonpayments."

Thus, the five-dollar administrative late fee is not a loan; rather, appellees assessed the fee as a reasonable advance estimate of the costs resulting from late payment or nonpayment of the monthly cable bill. Moreover, like the NSF fees in *First Bank*, there is no dispute that the five-dollar administrative late fee was charged to all customers in the same

amount and that the amount of the late fee had no relationship to the amount which the customer owed on the bill. Following the rationale in *Maloney, Tygrett, Rimco, First Bank,* and *Rivera,* we hold that because no lending transaction was involved in this case, there was no use, forbearance or detention of a lender's money. Therefore, the late fee does not constitute interest as defined in section 301.002(a)(4) of the Texas Finance Code. *See Redman Indus., Inc. v. Couch,* 613 S.W.2d 787, 789 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.) ("For there to be a usury cause of action there must be some type of loan in existence."). Without "interest," Garcia's usury claim must fail. *See First USA Mgmt.,* 960 S.W.2d at 628 (without interest, there can be no usury).

We AFFIRM the trial court's judgment.

## OPINION ON MOTION FOR REHEARING

This is an appeal from a summary judgment rendered in favor of the defendants, Texas Cable Partners, L.P., Time Warner, Inc., and Time Warner Telecom of Texas, L.P. The plaintiff, Javier Garcia, purchased cable television services and leased the necessary equipment in Weslaco, Hidalgo County, Texas, and paid, in addition to charges for his subscription and other services, a $5.00 "administrative fee" whenever his payment was late. It is this $5.00 fee that is the subject of this action.

The plaintiff brought the action on behalf of himself and all others similarly situated. His live pleading at the time of judgment was his Fifth Amended Original Petition, and it alleged numerous causes of action arising from this $5.00 charge, among them usury, an illegal penalty, an improper liquidated damage clause, and an unconscionable consumer lease. The plaintiff sought a declaratory judgment

and an injunction. We earlier affirmed the judgment because as a matter of law there was no usury. Appellant filed a motion for rehearing complaining we failed to address his other pleaded grounds for affirmative relief.

Defendants, appellees here, filed a motion for summary judgment with proof, alleging several grounds for judgment. Two defendants, Time Warner Telecom of Texas, L.P. and Time Warner, Inc., asserted they have never sold cable television services, or leased necessary equipment, to appellant. However, the principal grounds affecting all appellees are (1) res judicata, that the plaintiff is bound by an earlier judgment in a class action involving the same matter in Jefferson County, Texas; and (2) voluntary payment of the charge without protest. Several other grounds were in appellees' motion for summary judgment, but because the court granted judgment generally without specifying the particular basis, it will be affirmed if the judgment was proper on any ground asserted in the motion. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Clemons v. Citizens Medical Center,* 54 S.W.3d 463, 467 (Tex.App.-Corpus Christi 2001, no pet.). We will limit our discussion to the res judicata basis for summary judgment.

■ Appellees asserted in their motion for summary judgment that appellant, Javier Garcia, is bound by a final judgment in a class action styled *Owens et al v. TCI Cablevision of Dallas, Inc.,* cause number E–157–770, that was signed by the Honorable Donald Floyd, judge of the 172nd District Court of Jefferson County, Texas, on October 5, 2000. That final judgment was entered in settlement of a class action and explicitly provides that it "is intended by the parties and the Court to be res judicata and to prohibit, bar, and preclude any" other litigation on behalf of members of the class "with respect to late charges of

$5.00 or more assessed to or paid by Class members."

Appellant filed a response to the motion for summary judgment and challenged this particular ground for judgment on two bases: that the judgment is not final and there is no evidence that Javier Garcia is a member of the class. For the claim that the judgment is not final, and thus will not support the res judicata defense, appellant points to two provisions in the judgment that he claims make it interlocutory: that the court retains plenary power in paragraph 23 and that the judgment is subject to certain named conditions, paragraph 18, and there is no evidence that the conditions have been met. The response to the motion for summary judgment did not contend there were disputed factual issues that would preclude summary judgment on res judicata. The sole question is what is the legal effect of the judgment rendered by Judge Floyd of the 172nd District Court of Jefferson County in the lawsuit styled, *Owens, et al. v. TCI Cablevision of Dallas, Inc.*

That judgment provides:

This Final Judgment is intended by the parties and the Court to be *res judicata* and to prohibit, bar, and preclude any prior, concurrent, or subsequent litigation brought individually, or in the name of, or otherwise on behalf of the plaintiff, the Class Members, any others similarly situated, and/or the general public, with respect to late charges of $5.00 or more assessed to or paid by Class Members prior to the Effective Date of this Judgment and any claims related thereto which were or could have been alleged ... by any of the Class Members in any of the Class Systems respecting late fees of $5.00 or more. . . .

It also provides:

568

[E]ach member of the Settlement Classes, hereby release and forever discharge the Released Parties from any and all claims, demands, debts, liabilities, actions and causes of action ... arising out of ... Released Parties' late fee billing practices. ...

There is no controversy whether appellant is a member of the settlement class, as the Final Judgment defines a "Class Member" as "those past or present residential cable television subscribers in Texas who, at any time prior to the Effective Date of this Judgment, were assessed a late fee of $5.00 or more." The uncontroverted summary judgment evidence establishes that appellant was assessed or paid late fees during the relevant period.

Appellant argues that the judgment in the class action is not final because the court retained plenary power over the judgment. Paragraph 23 of the judgment states:

> 23. Jurisdiction is retained by this Court for the purpose of enabling any party to this Final Judgment to apply to the Court at any time for such further orders and directions as may be necessary and appropriate for (a) the carrying out of this Judgment, or (b) the modification of any injunctive provisions.

■ Appellant argues that *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191 (Tex.2001), mandates that the judgment here is interlocutory because there are remaining issues or parties to be adjudicated. However, *Lehmann* has no applicability here. The issue in *Lehmann* was whether a summary judgment was final so as to allow the Court of Appeals to take jurisdiction over the appeal. Whether the Jefferson County judgment may be appealed is not at issue here. Rather, its preclusive effect is. The retention of jurisdiction to enforce the judgment or to modify injunctive provisions does not preclude the finality of the judgment. *Ford v. City State Bank*, 44 S.W.3d 121, 130 (Tex.App.-Corpus Christi 2001, no pet.).

Appellant also argues the judgment is not final because there is no evidence that the conditions set out in paragraph 18 of the judgment have been met.

Paragraph 18 of the *Owens* judgment is entitled "Settlement Consideration" and provides the relief the Cable Television Defendants agreed to provide to class members, including product certificates for services, restitution in cash, and limitation of late fees in the future. There is no evidence or assertion that the class action defendants failed to comply with the terms of the "Settlement Consideration." We have not been directed to any language in the judgment that makes it conditional upon payment of the agreed consideration. Rather, the trial court retained limited jurisdiction to enforce the provisions of the judgment. We hold the judgment is final.

The motion for rehearing is OVERRULED. The judgment is AFFIRMED.